**In re: CLEARWATER DISCOUNT MARINE, INC., Debtor.**

**V. John BROOK, Jr., Trustee-in-Bankruptcy, Plaintiff,**

v.

**REPUBLIC BANK, a Banking Corporation, Defendant.**

**Bankruptcy No. 88–06591–8P7. Adv. No. 91–653.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 6, 1993.

Norman Davidson, Tampa, FL, for plaintiff.

Langfred W. White, Clearwater, FL, for defendant.

## ORDER ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AND REPUBLIC BANK'S MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is a claim asserted by V. John Brook, Jr., Trustee-in-Bankruptcy (Trustee), against Republic Bank, a Banking Corporation (Bank). The claim of the Trustee is based on § 549 of the Bankruptcy Code which permits the Trustee to invalidate certain post-petition transfers. The instant matters presented for this Court's consideration are Motions for Summary Judgment filed by the Trustee and by the Bank. Each contends that, since there are no genuine issues of material fact, the matters under consideration should be resolved in their respective favors. The procedural background relating to the Motions under consideration, as appears from the record, can be summarized as follows:

On October 31, 1988, Clearwater Discount Marine, Inc. (Debtor) filed a voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. On November 7, 1988, this Court entered an Order authorizing the Debtor-in-Possession to continue to do business. On November 8, 1988, the Debtor established a Debtor-in-Possession bank account with the Bank. On November 15, 1988, Mercury Marine Acceptance Corporation (MMAC), Mercury Marine (MM), Transamerica Finance Corporation (Transamerica), and ITT Commercial Finance Corporation (ITT) filed Motions to Prohibit Use of Cash Collateral. On November 22, 1988, after a final evidentiary hearing, this Court entered an Order permitting the Debtor the use of cash collateral with certain safeguards and granted adequate protection to the secured creditors who sought relief from the automatic stay. Each of these creditors was granted a post-petition lien on the proceeds of the sale of the Debtor's inventory, and the Bank was granted a post-petition lien on accounts receivable. The Bank had notice of all these cash collateral orders and on December 2, 1988, objected to a portion of the post-petition lien language in the order which limited the security interest to post-petition use of cash collateral. The Bank already held a pre-petition lien on Debtor's assets, including deposit accounts with the Bank, by virtue of pre-petition deposit relationships, and by virtue of contractual language in the original security agreement between Debtor and the Bank.

On December 12, 1988, the Debtor sought and obtained court authority to enter into a post-petition borrowing relationship with the Bank. Debtor was authorized to borrow $75,000.00, in connection with which the Debtor executed and delivered to the Bank a note, Security Agreement and UCC–1 financing statements. On September 25, 1989, during the pendency of the Chapter 11 case, the Bank filed a Proof of Claim in the amount of $275,000.00 in principal, plus interest from August 28, 1989, accruing at 12% per annum, less payments on the principal and interest, plus attorney's fees accruing post-petition totalling $6,664.00 as of September 13, 1989, plus attorney's fees accruing thereafter at an hourly rate of $125.00. The consideration for this claim was a pre-petition loan in the original principal

amount of $200,000.00, a pre-petition loan in the original principal amount of $50,-000.00, and a post-petition loan in the principal amount of $75,000.00, all secured by a security interest in the Debtor's furniture, fixtures, equipment, inventory, and accounts receivables and all pursuant to contracts providing for attorney's fees in the event of default. Subsequently, the Debtor defaulted in payment to the Bank as well as to other creditors. As a result, this case was converted to a Chapter 7 case on October 18, 1989, and Plaintiff was appointed Trustee on October 31, 1989.

Upon default, the Bank filed a Motion for Relief From Stay on October 31, 1989. On November 1, 1989, this Court entered an order directing a response to the Bank's Motion to Modify the Stay. The Trustee did not respond. On December 4, 1989, this Court entered an Order Granting Relief from the Stay. As of December 4, 1989, the Debtor owed the Bank $275,-000.00 and accrued interest of $8,891.83, totalling $283,891.83. On December 4, 1989, the Debtor-in-Possession account had a balance of $28,706.86. At some time subsequent to December 4, 1989, the Bank set-off the balance of this account against the debt owed by the Debtor.

The Trustee commenced this action seeking to avoid, under provisions of 11 U.S.C. § 549, the Bank's post-petition set-off of funds held in the Debtor-in-Possession account. The Trustee contends that the set-off was made without Court authority. The Trustee contends that funds upon which MMAC, MM, Transamerica, and ITT had liens, by virtue of the cash collateral order, represented proceeds from the sale of the collateral on which these creditors had a valid lien, and the proceeds were deposited into the same bank account as the account which was subsequently set-off by the Bank. The Bank, on the other hand, contends that it had a perfected security interest in the bank account, which was valid against the Trustee, because the bank account contained proceeds of pre-petition collateral by virtue of a post-petition lien granted by the Debtor pursuant to an Order of this Court and by post-petition contractual and common-law rights of set-off.

The Bank further contends that all necessary Court approval for the exercise of the Bank's rights of set-off were obtained prior to the time the set-off was made.

It is evident from the pleadings and from the stipulated facts that this is not really a challenge on the Bank's right to exercise a set-off in the orthodox sense pursuant to § 553 of the Bankruptcy Code. This Section deals with set-offs of mutual debts owing by the creditor to a debtor against the claim of the creditor against the debtor, both of which must *arise before the commencement of the case.* What is involved in the matter under consideration is an attempt by the Trustee of the estate to avoid a post-petition transfer pursuant to § 549(a)(1), (2)(B). In this instance, the transfer to be avoided is the freeze and then the application of the monies on deposit in the Debtor's bank account against the monies owed by the Debtor to the Bank. It is without dispute that the debt owed by the Bank to the depositor, i.e. debtor-in-possession, arose post-petition, and the debt owed to the Bank by the Debtor arose at least in greater part pre-petition.

Based on the foregoing, it is evident that the threshold question is whether the Bank's application of the monies on deposit to debt owed by the Debtor was a "transfer" within the meaning of that term as defined by the Bankruptcy Code. The Bankruptcy Code broadly defines a transfer in § 101(54) to mean "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." Clearly, the Bank's action was a transfer because, after freezing and applying the balance, the Debtor no longer had what it once had, i.e., a right to withdraw the balance on the account.

Having concluded that the transaction under consideration was a transfer, this leaves for consideration whether or not it could be avoided by the Trustee pursuant

to § 549 of the Bankruptcy Code on the basis that it was not authorized by the Court. The literal reading of § 549(a)(1), (2)(B) leaves no doubt that it was not authorized. This Section provides that:

549. Postpetition transactions

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that after the commencement of the case; and

.        .        .        .        .

(2)(B) that is not authorized under this title or by the court.

.        .        .        .        .

It is equally clear, however, by virtue of the Order authorizing post-petition financing, that the Bank was granted a security interest in specific inventory of the Debtor and general intangibles as described in Exhibit "A" to the UCC–1 Financing Statement. In light of the fact that it is impossible to determine whether the funds on deposit, which the Bank admittedly off-set, represent either: (1) proceeds of the Debtor from that particular inventory which was pledged as collateral for post-petition financing; or (2) proceeds from other inventory on which the Bank has no security interest. On this record, it is impossible to resolve that issue. However, this fact alone does not prevent this Court to conclude and hold that the Bank's attempt to off-set the balance in the Debtor's account against the debt owed to the Bank prepetition was an impermissible set-off, as was the attempt to set-off against the funds loaned post-petition.

Based on the foregoing, it is appropriate to grant a Partial Summary Judgment in favor of the Trustee provided, however, its interest in the funds is validly encumbered and subject to the interest of the Bank and other competing claims asserted by MMAC, MM, Transamerica and ITT. Inasmuch as the Court already granted the Bank's Motion to Lift Automatic Stay and the Bank is free to litigate the validity of its claim in an appropriate forum, the Trustee shall abandon any interest in the funds which were subject to the set-off.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that a Partial Motion for Summary Judgment is hereby granted in favor of the Trustee. It is further

ORDERED, ADJUDGED AND DECREED that Republic Bank's Motion for Summary judgment is hereby denied.

DONE AND ORDERED.