In re YARN PROCESSING PATENT VALIDITY LITIGATION.

LEX TEX LTD., INC., Plaintiff,

v.

ARCT, INC., Defendant.

LEX TEX LTD., INC., Plaintiff,

v.

MACFIELD TEXTURING, INC., Defendant.

LEX TEX LTD., INC., Plaintiff,

v.

AVTEX FIBERS, INC., Defendant.

Nos. 78–C–6117–Civ–CA, 78–C–6118–Civ–CA and 78–C–6164–Civ–CA.

United States District Court, S. D. Florida.

Dec. 20, 1978.

Arthur O. Cooke, Cooke & Cooke, Greensboro, N. C., Daniel A. Kavanaugh, Kavanaugh & Lieby, Miami, Fla., for movant-defendant Arct, Inc.

A. Blackwell Stieglitz, Fowler, White, Burnett, Hurley, Banick & Knight, P. A., Miami, Fla., for movant-defendant Macfield Texturing & Artex Fibers, Inc.

James W. Crabtree, Smathers & Thompson, Miami, Fla., for plaintiff-movee Lex Tex Ltd., Inc.

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

ATKINS, Chief Judge.

On March 22, 1972, after notice and hearing, the Judicial Panel on Multidistrict Litigation transferred six related civil actions for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 to the United States District Court for the Southern District of Florida. All such actions were assigned to this Court.[1] Pursuant to Rule 9 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, these three tag-along cases were transferred under 28 U.S.C. § 1407 and consolidated with the others before this Court on March 28, 1978.

This present motion is for summary judgment by defendant-movants, ARCT, INC., MACFIELD TEXTURING, INC., and AV-TEX FIBERS, INC.[2] The defendant-movants assert they are immune from suit by plaintiff, LEX TEX LTD., INC., on patents 3,077,724 and 3,091,912, based on an agreement between LEX TEX'S predecessor in interest, Leesona Corporation, with several corporations and companies[3] including Ateliers Roannais De Constructions Textiles (Arct-France) dated March 31, 1964. The motion is DENIED.

The 1964 agreement contains certain arguably ambiguous language. The final "Whereas" clause states that it is:

". . . desirable to settle all pending disputes including all matters presently in issue in the aforementioned litigation, and to avoid the possibility of further dispute or litigation based on patents hereinafter identified with respect to yarn processing equipment *hereafter made*, sold or licensed for use in the United States." (Emphasis added by the Court).

Then in paragraph 1 of the agreement the parties state:

"1. Leesona hereby agrees that it will not bring suit under any one or more of its United States patents . . . against ARCT[4] or WHITIN or any licensee of either or against any customer (including lessees) of ARCT or WHITIN or any licensee or sublicensee of CHAVANOZ with respect to the manufacture,

---

1. None of the originally transferred cases are presently before this Court. For a more complete procedural history, *see In re Yarn Processing Patent Validity Litigation*, 541 F.2d 1127 (5th Cir. 1976), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2976, 53 L.Ed.2d 1094 (1977); *In re Yarn Processing Patent Validity Litigation*, 498 F.2d 271 (5th Cir.), *cert. denied*, 419 U.S. 1057, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974); and *In re Yarn Processing Patent Validity Litigation*, 341 F.Supp. 376 (Jud.Pan.Mult.Lit.1972).

2. Mafco Texture Fibers, Inc., National Spinning Company, Hoechst Fiber Industries, J. P. Stevens Company and Monsanto North Carolina, Inc. joined in the motion.

3. The agreement was between Leesona and Whitin Machine Works, Moulinage El Retorderie De Chavanoz (Chavanoz), Arct-France and Deering Milliken Research Corporation (DMRC).

4. Arct-France.

sale or use of any yarn processing machine or apparatus involving false twisting or thermal processing which is *now being* or has been manufactured by ARCT in commercial production and offered for sale which is identified in Appendix 'A'." (Emphasis added by the Court).

The plaintiff, LEX TEX, maintains that the three movants in this case are not immune from suit based on paragraph 1 of the agreement since, (1) none of the machines being operated today were being manufactured in 1964; (2) none of the movants are or were licensees or sublicensees of Chavanoz, therefore are outside paragraph 2 of the agreement which protects "any use of machines made by ARCT or WHITIN and licensed for use by DMRC or CHAVANOZ," and (3) only Arct, Inc. was a customer of Arct-France.

In addition, LEX TEX points to paragraph 5 of the agreement which states in part:

"[t]he above undertakings by LEESONA shall relate only to machines or apparatus which are operated or used under license or sublicense from CHAVANOZ and which are either, a) made by ARCT or WHITIN or b) identified in Appendix 'A' and made by a licensee of ARCT or WHITIN."

LEX TEX argues that none of the defendant-movants is a licensee or sublicensee of Chavanoz.

ARCT, INC., MACFIELD TEXTURING, INC., and AVTEX FIBERS, INC. contend (1) that the last "Whereas" clause and paragraph 1 should be construed to include them under the covenant not to sue; (2) that an implied license from Chavanoz existed; (3) that all three defendants were "customers" of Arct-France; (4) that the reference to machines "hereafter sold" included all "types" identified in Appendix "A" and not merely machines built in 1964; and (5) that they are immune under paragraph 2 of the agreement as well.

## I.

In construing the last "Whereas" clause of the agreement and paragraph 1, the defendants maintain that LEX TEX has pursued a consistent course of conduct that upholds their construction affording protection to them from suit under the '724 and '912 patents. It is clear that this Court must view the attendant circumstances of the contract to aid in proper construction, including subsequent acts and statements by the plaintiff through its officers. As the late Professor Corbin stated:

". . . it is invariably necessary, before a Court can give any meaning to the words of a contract and can select one meaning rather than other possible ones as the basis for the determination of rights and other legal effects, that extrinsic evidence shall be heard to make the court aware of the 'surrounding circumstances' including the persons, objects, and events to which the words can be applied and which caused the words to be used." 3 A. Corbin, Contracts § 536 (1950).

This doctrine of construction has been applied in cases of summary judgment. In *Brown v. Financial Service Corporation International*, 489 F.2d 144, 151 (5th Cir. 1974), Judge Ingraham noted its application in that context:

"The principle that conflicting provisions should be reconciled in order to give meaning to all parts of the contract might not warrant interpreting Brown's language as we have. Another established rule of contract interpretation, however, is that courts may look to subsequent action of the parties to determine the interpretation that they themselves placed on the contractual language."

The defendants point to several instances of action and non-action on the part of LEX TEX which they feel supports their interpretations. Included among these instances are recent agreements, letters to parties, a failure to sue previously by LEX TEX, and testimony under oath that the agreement extended to Arct and its customers. In opposition, LEX TEX offers the affidavit of

its President, Robert F. Conrad, in which he states that the company officers believed Arct-France sold double heater machines through the agency of ARCT, INC., and that Arct customers operated these machines under a license from DMRC. Under the circumstances, he asserts that LEX TEX believed it was barred from suing under the 1964 agreement. He also states that LEX TEX adhered to that opinion until the decision in *Duplan Corporation v. Deering Milliken, Inc. et al.*, 444 F.Supp. 648 (D.S.C.1977), whereupon it reconsidered its position as a clear-cut factual basis for suit appeared to exist.[5]

The defendants state that this lack of knowledge avowed by LEX TEX cannot be used as a valid reason to deny summary judgment based on this "subsequent act" construction theory. However, if the affidavit of Conrad is to be given any weight, the issue can be more clearly seen as going to the intent and motivation of LEX TEX. In fact, the validity of the plaintiff's argument may rest upon whether it was negligent in not ascertaining that the movants could have been sued at an earlier juncture.

In *Croley v. Matson Navigation Company*, 434 F.2d 73 (1970) *rehearing denied*, 439 F.2d 788 (5th Cir. 1971), an action was brought for injury to, and wrongful death of employees of a shipyard resulting from the explosion of vapors on a dead ship being converted to a trailer carrier. In reversing the District Court's grant of summary judgment, Judge Wisdom stated:

"Summary judgment will not usually be as feasible in negligence cases, where the standard of the reasonable man must be applied to conflicting testimony, as it is in other kinds of litigation. . . . Even when the facts underlying the issue of negligence are undisputed, the issue must still be submitted to the jury if reasonable men could reach different conclusions and inferences from those facts." *Id.* at 75.

Later in the opinion, Judge Wisdom stated further:

"Knowledge on the part of the company can be proved only by showing the state of mind of its employees. The court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind." *Id.* at 77.

Unlike the *Brown* case, *supra*, the conduct of the parties in the present action does not leave this Court convinced of the proper interpretation of the ambiguous language of the last "Whereas" clause and paragraph 1. Rather, this case is more closely analogous to *Zell Insurance Agency, Inc. v. Guaranty Security Insurance Co.*, 399 F.2d 147 (5th Cir. 1968). In *Zell*, a fire insurer sued an agency for indemnity on an agency contract. The District Court granted summary judgment and on appeal the Fifth Circuit reversed since *Guaranty's* case depended on the proper interpretation of a series of facts and circumstances:

"The entire question is what Guaranty intended and what Zell understood from the letters of November 27, 1963, and October 3, 1964. This involves the interpretation of what was meant by the terms of the letter, and '[i]nterpretation is always a question of fact.' " *Dobson v. Masonite Corporation*, 359 F.2d 921, 923 (5th Cir. 1966)."

A further problem is to determine what is "identified in Appendix A." The movants state the machines involved are the "type" included in Appendix "A", point to the testimony of MACFIELD'S Chairman of the Board, Mr. McMichael, in his deposition to that effect (p. 26), the fact that the plaintiff has never differentiated between the machines until recently, and that at one point LEX TEX through Mr. Conrad had represented that the later-model improved machines (FTF–440 and FTF–480) were immune from suit under the '724 and '912 patents.

The situation in the present case is closely parallel to the facts in *Diematic Mfg. Cor-*

---

5. As the movants quite clearly state in their reply brief, they are not arguing estoppel or laches, but that Lex Tex's acts subsequent to the agreements signing indicate the correct interpretation that all parties to this action held until just prior to the instigation of this action.

*poration v. Packaging Industries, Inc.*, 412 F.Supp. 1367 (S.D.N.Y.1976). *Diematic* involved a suit for patent infringement under a covenant not to sue. The Court held that there was a question of fact as to whether a new tray and machine developed subsequently to the 1965 agreement fell within the description of the covenant. In the present case there is contradictory testimony. The movants offer the deposition of MACFIELD Chairman McMichael and various assertions and non-assertions by LEX TEX, while the plaintiff also points to sections of McMichael's deposition, and those of AVTEX and ARCT, INC., as well.

Here, as in *Diematic*, we cannot say that "no genuine issue of material fact justifying a trial is present to allow this Court to grant summary judgment under paragraph 1 of the agreement. F.R.Civ.P. 56(c).[6]

The question of whether ARCT, INC., MACFIELD TEXTURING, INC., and AVTEX, INC., are customers within the meaning of paragraph 1 is therefore irrelevant for purposes of this motion.

## II.

The defendant-movants also claim they are immune from suit under paragraph 2 of the agreement. Paragraph 2 applies to "any user of any machine made by ARCT or WHITIN and licensed for use by DMRC or CHAVANOZ." LEX TEX points to paragraph 5 of the agreement which limits "the above undertakings by LEESONA . . . to machines or apparatus which are operated or used under license or sublicense from CHAVANOZ," and refers to the depositions of ARCT, INC., MACFIELD, and AVTEX where it appears no such license exists.

The issue turns on whether the movants have an implied license as a matter of law co-extensive with Arct-France and Chavanoz. Much of the movants' argument is based on the affidavit of Robert F. Waters

and a certain agreement contained in Addendum "A". Since much of the relevant portions of the Waters' affidavit and Addendum "A" have been stricken from the record as incompetent, this Court cannot hold as a matter of law such license exists.

---

**6.** We hold so in due deference to this statement by the Supreme Court in *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962):

"Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'"
*See also* 6 Pt. 2, J. Moore, FEDERAL PRACTICE § 56.17[11] (2d ed.1976).