**In re CONSTRUCTION CONTRACTORS OF OCALA, INC., Debtor.**

**Charles W. GRANT, Trustee, Plaintiff,**

v.

**LATHAN CONSTRUCTION CORP., Michael Oehlerking, and Leven H. Ozcel d/b/a Castlerock Landfill, Defendants.**

**Bankruptcy No. 94–1579–BKC–3P7. Adv. No. 95–123.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

May 6, 1996.

---

Ronald Bergwerk, Jacksonville, FL, for Plaintiff.

Richard Perry, Ocala, FL, for Oehlerking and Ozcel.

Patrick Crowell, Orlando, FL, for Lathan Const. Corp.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court on a five count complaint regarding a contract dispute. Upon the evidence presented at trial on December 12, 1995 and February 20,

1996, the Court enters the following findings of fact and conclusions of law:

1. Defendant Lathan Construction Corporation (Lathan), a general contractor, entered into a construction contract to build a Lowe's store in Ocala, Florida (the project).

2. On December 27, 1993, Lathan entered into a subcontract with the debtor, Construction Contractors of Ocala, Inc., to perform sitework on the project. The total value of the subcontract was $1,258,000. A change order dated April 20, 1994, revised the subcontract amount to $1,266,256. [Lathan Ex. 1; Plaintiff Ex. 1]. The subcontract stated that time was of the essence. [Lathan Ex. 1 at ¶ 11].

3. The subcontract required that all modifications of the subcontract be in writing and signed by Lathan. The subcontract also provided that no changes to the work would be made except on the written order of the contractor, signed by the project manager. A handwritten addition to the contract stated that "any rock removal as stated in the specifications shall be extra to this contract." [Lathan Ex. 1; Plaintiff Ex. 1].

4. On April 15, 1994, debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and continued to operate as debtor in possession.

5. Pursuant to the subcontract, the debtor submitted four draw requests to Lathan. Lathan made payments on the draws on February 17, 1994, March 23, 1994, May 5, 1994, and May 24, 1994. [Lathan Ex. 5, 11, and 12]. The payments made by Lathan to debtor totalled $645,396.33. [Plaintiff Brief at 5; Lathan Ex. 5]. Corresponding to each draw request is a release of lien signed by or on behalf of the debtor. [Lathan Ex. 12].

6. Through a series of correspondence to the debtor between February 4, 1994, and May 9, 1994, Lathan documented its dissatisfaction with the rate and quality of defendant's work on the project. [Lathan Ex. 3]. By letter dated May 9, 1994, Lathan informed the debtor that debtor's failure to comply with he terms of the subcontract constituted a material breach and that if the breach was not cured within twenty-four hours, Lathan would employ "the necessary people and equipment to complete [the] contract work...." [Lathan Ex. 3].

7. On May 11, 1994, Lathan terminated debtor's subcontract. [Lathan Ex. 4]. On the same date, Lathan entered into a new subcontract with Michael Oehlerking and Leven H. Ozcel d/b/a Castlerock Landfill to complete the project in the amount of $594,-230. [Lathan Ex. 6].

8. Lathan's payments to Castlerock, including change order variations to the subcontract, totaled $753,716.87. [Lathan Ex. 7]. Lathan's payments to Castlerock exclusive of the change orders totaled $594,230. [Lathan Ex. 7; Lathan Ex. 6; Plaintiff Brief at 5].

9. On November 2, 1994, debtor's case was converted to one under Chapter 7 of the Bankruptcy Code and Plaintiff was appointed as Trustee.

10. On April 21, 1995, Plaintiff commenced this adversary proceeding by filing a five-count complaint against Lathan Construction, and Michael Oehlerking and Leven H. Ozcel d/b/a Castlerock Landfill. In Count I, Plaintiff claims that Lathan breached its subcontract with the debtor by improperly terminating the contract and by failing to pay all sums due under the contract. Plaintiff alleges that debtor suffered damages as result of Lathan's breach and that those damages are property of debtor's bankruptcy estate.

In Count II, Plaintiff alleges that the subcontract between Lathan and the debtor was property of the estate, and that pursuant to 11 U.S.C. § 549, Lathan's termination of the subcontract and its "reletting" of the balance of the contract to Castlerock constituted an avoidable transfer of estate property.

In Count III, alleges that pursuant to an oral contract, debtor performed additional work valued at $72,458.54 which was outside the scope of the original subcontract. Plaintiff claims Lathan breached the oral contract by refusing to pay for the additional work and that the damages are property of the estate.

In Count IV, Plaintiff alleges that the debtor was a third-party beneficiary of an

oral agreement between Lathan and Castlerock, under which Castlerock agreed to pay debtor's outstanding creditors in conjunction with its subcontract with Lathan. Plaintiff claims that Lathan and Castlerock breached the agreement and debtor's estate has been damaged by that breach.

In Count V, Plaintiff alleges that in consideration for Lathan's and Castlerock's agreement to pay the outstanding creditors of the debtor, debtor agreed to release his inchoate construction lien against the project. Debtor claims that it fully performed its obligation under the agreement and that it has been damaged by Lathan's and Castlerock's breach.

9. As answer to the complaint, Lathan asserted the following affirmative defenses:
1. Failure to state a claim for relief;
2. Prior breach;
3. Setoff;
4. Waiver/Lack of Written Change Order;
5. Statute of Frauds.

Lathan also filed a counterclaim against the debtor's estate, alleging that it had been damaged by debtor's breach of the subcontract and that the estate is liable for payment of those damages.

10. Defendants Oehlerking and Ozcel also answered and asserted two affirmative defenses. First, Oehlerking and Ozcel allege that they were not party to the subcontract with Lathan, but merely signed the agreement as representatives of Castlerock. Second, Oehlerking and Ozcel allege that the subcontract between Lathan and the debtor was never assumed by the debtor or the Plaintiff and thus is not an asset of the estate.

11. At trial, Lathan, Oehlerking, and Ozcel made *ore tenus* motions to dismiss Counts IV and V of the complaint. The Court granted the motions and proceeded to trial on Counts I, II, and III.

### CONCLUSIONS OF LAW

#### Count I

A. *Lathan properly terminated debtor's subcontract.*

▮ Plaintiff first alleges that Lathan breached the subcontract by improperly ter-

minating it. Under Florida law, "[a] contract will be construed according to its own clear and unambiguous terms." *Cueto v. John Allmand Boats, Inc.,* 334 So.2d 30, 32 (Fla. 3rd D.C.A. 1976) *cert. denied* 341 So.2d 290 (Fla.1976). When words or terms used in a contract have known legal meaning, it is presumed that the parties intended the contract to be interpreted in accordance with that meaning. *Wilcox v. Atkins,* 213 So.2d 879, 881 (Fla.2d D.C.A. 1968).

▮ Although forfeiture provisions are generally disfavored, they are enforceable in law and in equity when liberally construed in favor of the debtor. *Holtsinger, Inc. v. Cordaro (In re Cordaro),* 20 B.R. 814, 816 (Bankr.M.D.Fla.1982). When an unambiguous contract includes termination rights, "[t]here is no legal reason why the termination provisions of the agreement cannot ... be specifically enforced." *Edwin K. Williams & Co.—East v. Hustad,* 321 So.2d 600, 601 (Fla. 4th D.C.A. 1975). *See also Days Inns of America Franchising, Inc. v. Gainesville P–H Properties, Inc. (In re Gainesville P–H Properties, Inc.),* 77 B.R. 285, 296 (Bankr.M.D.Fla.1987) (holding that termination agreements effective under state law are enforceable in bankruptcy.) One Florida Bankruptcy court has held that "[a] contractual right of termination survives the filing of a petition in bankruptcy." *Lauderdale Motorcar Corp. v. Rolls–Royce Motors Inc. (In re Lauderdale Motorcar Corp.),* 35 B.R. 544, 548 (Bankr.S.D.Fla.1983).

▮ Florida law also provides that in equity, contract terms which make time of the essence should be enforced. *Blaustein v. Weiss,* 409 So.2d 103, 105 (Fla. 4th D.C.A. 1982). *See National Exhibition Company v. Ball,* 139 So.2d 489, 492 (Fla.2d D.C.A.1962).

▮ The subcontract between Lathan and the debtor contained the following termination provision:

Should Subcontractor at any time.... fail in any respect to prosecute the Work with promptness and diligence, or cause by any action or omission the stoppage or delay of

or interference with the Work or of any other Subcontractors or otherwise be in default of the Subcontract, Contractor may after twenty four (24) hours written notice ... provide through itself or through others, any such labor or materials, and deduct the cost thereof from any money due or thereafter to become due the Subcontractor.

[Lathan Ex. 1 at ¶ 5]. Paragraph 11 of the subcontract specifically stated that time was of the essence. [Lathan Ex. 1 at ¶ 11].

The subcontract provided that Lathan could terminate the contract for debtor's inability to perform in accordance with the agreed terms. Letters from Lathan to the debtor indicated that the debtor was far behind on the work schedule and failed to cure this problem even after several warnings from Lathan. Also, shortly after the debtor filed its bankruptcy petition, it informed Lathan that it would no longer be able to perform the contract.

The subcontract stated that time was of the essence and that extensions were available only upon written request. No evidence was produced to suggest that the debtor requested an extension. The termination clause in the contract required Lathan to give the debtor twenty-four hours notice and a chance to cure the default. Lathan terminated the contract in strict compliance with the termination provision and the Court finds that the termination was justified and proper.

### B. Debtor released Lathan from all payment obligations.

■ Plaintiff next alleges that Lathan breached the subcontract by failing to make all payments due to debtor. After reviewing the evidence, however, the Court disagrees. The debtor submitted four draw requests to Lathan. Lathan paid each request in a timely manner. In addition, the debtor executed a series of releases which stated that Lathan owed debtor no more money.

Although some of Lathan's checks were made payable to both the debtor and the debtor's suppliers, debtor never objected to this method of payment and it became the normal course of business between the parties. See In re B.J. Thomas, Inc., 45 B.R. 91, 96 (Bankr.M.D.Fla.1984) (holding that "where a party to a contract acts in such a manner as to indicate that he does not intend to hold another to a contract provision, he *may* be deemed to have waived his right to enforce the provision."

■ Plaintiff claims that the debtor is owed for its payroll expenses between the last draw request and the date of termination. The last release signed by the debtor, however, was executed after the termination date. The Court finds that the debtor released Lathan from any payments allegedly owing. At trial, debtor's representative testified that he was pressured into signing the releases. Plaintiff, however, failed to offer substantial proof of duress and the Court finds this argument unpersuasive. A release of lien is an enforceable document. Fla.Stat. 713.20 (1995).

Plaintiff also claims it was damaged by Lathan's alleged breach. Plaintiff, however, failed to offer proof of the value of its partial performance. *Avilia v. State of Florida*, 278 So.2d 298 (Fla. 4th D.C.A. 1973).

The Court finds that Lathan did not breach the subcontract and that the debtor is not entitled to recover damages.

### II. Count II

### A. Debtor's subcontract was property of the estate.

In Count II, Plaintiff first argues that the subcontract between the debtor and Lathan was property of the debtor's bankruptcy estate. Section 541 of the Bankruptcy Code defines a bankruptcy estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

■ A debtor's interest in property is determined by state law. *Dewhirst v. Citibank (In re Contractors Equipment Supply Co.)*, 861 F.2d 241, 244 (9th Cir.1988); *First Indemnity of America Insurance Company v. Modular Structures, Inc. (In re Modular Structures, Inc.)*, 27 F.3d 72 (3d Cir.1994). Plaintiff, as trustee, has no greater control

over that interest than did the debtor. *Paul v. Monts,* 906 F.2d 1468, 1473 (10th Cir.1990).

Lathan argues that the contract was never a part of the estate because it was an executory contract which was never assumed by the trustee. The Court disagrees. The debtor had an interest in the subcontract when it filed its petition, and by definition, the contract rights represent an interest of the debtor.

Debtor had an interest in the subcontract and the Court finds that debtor's interest became a part of debtor's bankruptcy estate. Debtor's interest, however, changed upon Lathan's termination of the subcontract. After termination, the debtor had a contingent interest in recovering any sums left from the original contract that were not paid to other subcontractors in the completion of the project. Thus, Plaintiff's management of debtor's bankruptcy estate includes control over debtor's rights remaining under the subcontract, but those rights were severely limited by the debtor's breach and Lathan's subsequent termination of the subcontract.

*B. Castlerock subcontract was not an avoidable transfer.*

Under Bankruptcy Code section 549, the Plaintiff, as trustee, has the power to avoid transfers of property in which the debtor has an interest. Debtor's interest in the subcontract with Lathan, however, was modified after Lathan terminated the contract.

Pursuant to the termination provision, Lathan contracted with Castlerock Landfill to complete the project. After Lathan entered into the subcontract with Castlerock, the debtor still had the same contingent interest in the property that it had immediately after the termination but prior to the Castlerock contract.

One Court in this District has held that when looking at avoidable transfers, the Court must determine what, if anything, the estate really lost. *Brook v. Republic Bank (In re Clearwater Discount Marine, Inc.),* 150 B.R. 74, 76 (Bankr.M.D.Fla.1993).

The Court finds that Lathan's subcontract with Castlerock Landfill was not an avoidable transfer of debtor's subcontract. Debtor's subcontract was terminated in accordance with state law. Upon termination, the debtor's interest in the property became contingent on Lathan's ability to complete the project with another subcontractor. The debtor could enforce nothing more than this contingent right against Lathan, and the Plaintiff is limited by the rights of the debtor.

After Lathan subcontracted with Castlerock, the debtor's estate retained an unchanged contingent interest in the original subcontract. Thus, the estate really lost nothing when Lathan subcontracted with Castlerock. Lathan paid to Castlerock the amount of the balance of debtor's contract because Castlerock performed the work. It would be inequitable to require Lathan to pay debtor's estate for work debtor never completed and for which Lathan has already made payment to Castlerock.

The Court finds that Lathan's subcontract with Castlerock Landfill was not an avoidable transfer pursuant to 11 U.S.C. § 549.

Defendants Oehlerking and Ozcel argue that even if the Castlerock subcontract was an avoidable transfer, Plaintiff could not recover against them personally because they were merely representative signatories for Castlerock. Plaintiff argues that Oehlerking and Ozcel did not sign the contract in a representative capacity and would be liable for the avoidable transfer pursuant to 11 U.S.C. § 550.

The Eleventh Circuit has stated that evaluating the extent of a person's control of transferred funds is a determinative factor in deciding whether that person is a transferee for purposes of § 550. *Nordberg v. Arab Banking Corporation (In re Chase & Sanborn Corporation),* 904 F.2d 588 (11th Cir. 1990). All checks from Lathan on the second subcontract were made payable to Castlerock and were deposited in the Castlerock corporate account. Neither Oehlerking nor Ozcel used those funds for personal benefit or had control over those funds. Oehlerking and Ozcel were neither the initial transferee, the entity for whose benefit such transfer was

made, or any immediate or mediate transferee of such initial transferee. Therefore, even if the Castlerock subcontract was an avoidable transfer under § 549, the Plaintiff could not seek repayment from Oehlerking and Ozcel.

### III. Count III

In Count III, Plaintiff alleges that Lathan breached an oral contract between the parties under which the debtor was requested to perform extra work outside the scope of the original subcontract.

Florida law defines a change order as "labor, services, or materials for improving real property authorized by the owner and added to or deleted from labor, services, or materials covered by a previous contract between the same parties." Fla.Stat. 713.01(10) (1995).

■ The subcontract between Lathan and the debtor required all modifications to be in writing. The subcontract also included a change order clause which required all change orders to be in writing. Change order clauses are enforceable under Florida law. *Acquisition Corp. of America v. American Cast Iron Pipe Company*, 543 So.2d 878 (Fla. 4th D.C.A.1989). Additionally, the contract included project specifications which detailed what work was included in the contract.

Plaintiff alleges that pursuant to Lathan's request, the debtor performed excavation, tree removal, and rock removal which were extra to the contract. The first excavation is evidenced by a change order which is unsigned. [Plaintiff Ex. 3]. The second excavation order is also evidenced by an unsigned change order, but was denied by Lowe's because the work described in the change order was already included in the scope of the debtor's contract. [Plaintiff Ex. 4; Plaintiff Brief at 5]. The work description in the change orders for the excavation is identical. The Court finds it reasonable that if the second change order was within the scope of the original subcontract, the first excavation change order was as well. In addition, the language of the subcontract generally covered unclassified excavation. [Lathan Ex. 20]. The Court finds that the excavation performed by the debtor was within the scope of the original subcontract and Plaintiff is not entitled to recover additional compensation on behalf of the debtor.

The tree removal was also included in the subcontract. The parties' dispute over this work hinges on whether the trees to be removed were to be marked, or whether all trees were to be removed *unless* they were marked. Under the contract, the debtor was responsible for tree removal of all trees not tagged to remain [Lathan Ex. 20]. The plaintiff argues that the trees in question were not tagged "for removal." This is obviously a mistake in Plaintiff' interpretation of the contract. All trees not tagged were to be removed as part of the contract, and debtor's removal of those trees should not be an "extra" expense levied against Lathan.

■ Finally, the Court finds that the debtor's estate is not entitled to compensation for the rock removal. Letters from Lowe's and Lathan indicate that special approval was required before the debtor could engage in the rock removal for which it claims it was not paid. [Plaintiff Ex. 9]. Thus, it appears that the parties did reach an agreement for rock removal which would require Lathan to pay debtor for rock removal performed outside the scope of the contract.

The Court, however, finds that Lathan did not breach any payment agreement because the debtor executed a final release which absolved Lathan's duty to make payment for the rock removal. Additionally, Lathan's representatives testified that the debtor never billed Lathan for the work. Thus, Plaintiff is not entitled to recover for extra rock removal because debtor released Lathan from that obligation.

### IV. Lathan's Counterclaim

■ Lathan filed a counterclaim against the Plaintiff, alleging that the debtor breached the subcontract and that debtor's breach caused Lathan to incur expenses above the original subcontract amount. Pursuant to the terms of the subcontract, Lathan is entitled to recover from the debtor any expenses over the amount of the original subcontract

that Lathan was forced to pay to another entity to complete the project.

The evidence indicates that Lathan paid Castlerock $159,486.87 over the original contract amount. This amount was primarily the result of change orders entered after the original subcontract was executed. The termination provision of the original subcontract is silent on whether change orders in new subcontracts can be charged to the original defaulting subcontractor.

The Court finds that the debtor did breach the subcontract. In accordance with the termination provision, Lathan rightfully contracted with Castlerock to complete the project. The termination provision specifically states that Lathan may charge the debtor for extra expenses occurred in obtaining a substitute contractor to complete the project. A plain meaning interpretation of the subcontract would require debtor to pay Lathan for any sums Lathan expended above the original subcontract amount. Thus, the Court finds that Lathan is entitled to recover $159,486.87 from the debtor's estate. The Court, however, makes no ruling on Lathan's failure to file a claim for this amount.

Lathan also alleges that it is entitled to recover attorney fees. The subcontract provided that Lathan could recover attorneys fees and costs from the debtor if Lathan was forced to bring litigation against the debtor to enforce the subcontract. The "Attorneys Fees" provision also provided that any such litigation would be held in Seminole County, Florida.

At trial, Lathan's attorney presented exhibits reflecting his fees and costs connected with this litigation. [Lathan Ex. 10, 22]. These exhibits, however, were not received into evidence and the Court is barred from considering them in making its determination.

The Court finds that this adversary proceeding is not the type of litigation contemplated in the "Attorneys Fees" provision of the subcontract. Lathan did not file this proceeding to enforce the subcontract. In addition, the forum selection clause in the "Attorney Fees" provision to limits Lathan's ability to collect attorney fees in this Court.

Absent evidence to support the claim for attorneys fees and considering the problems with enforcing the "Attorneys Fees" provision of the subcontract, the Court finds that Lathan is not entitled to collect attorneys fees from the debtor's estate.

### V. Conclusion

On Count I, the Court finds that Lathan properly terminated debtor's subcontract and that debtor released Lathan from all payment obligations. On Count II, the Court finds that debtor's subcontract was a part of debtor's bankruptcy estate, but that debtor's interest in the subcontract changed upon termination of the contract. The Court also finds that Lathan's subcontract with Castlerock Landfill was not an avoidable transfer under Bankruptcy Code § 549 and that the Plaintiff may not recover for such against defendants Lathan, Oehlerking, or Ozcel under § 550.

On Count III, the Court finds that the debtor performed excavation and tree removal which were within the scope of the original subcontract. The Court finds that the debtor performed rock removal which was beyond the scope of the contract, but that the debtor never billed Lathan for this service and debtor released Lathan from all payments due.

The Court finds that Lathan is entitled to recover from debtor's estate the amount Lathan expended to complete the project utilizing the services of Castlerock Landfill. Lathan, however, is not entitled to attorneys fees.

The Court will enter a separate judgment consistent with these findings of fact and conclusions of law.

### JUDGMENT

This proceeding came before the Court on a five count complaint regarding a contract dispute. Upon findings of fact and conclusions of law separately entered, it is

ORDERED:

1. On Count I, judgment is entered in favor of the defendants, Lathan Construction Corp., Michael Oehlerking, and Leven H. Ozcel d/b/a Castlerock Landfill, and against the plaintiff, Charles W. Grant, Trustee.

2. On Count II, judgment is entered in favor of the defendants, Lathan Construction Corp., Michael Oehlerking, and Leven H. Ozcel d/b/a Castlerock Landfill, and against the plaintiff, Charles W. Grant, Trustee.

3. On Count III, judgment is entered in favor of the defendants, Lathan Construction Corp., Michael Oehlerking, and Leven H. Ozcel d/b/a Castlerock Landfill, and against the plaintiff, Charles W. Grant, Trustee.

4. Defendant Lathan Construction Corp. is entitled to recover $159,486.87 from debtor's estate, but the Court makes no ruling on Lathan's failure to file a claim in this amount. Defendant Lathan is not entitled to recover attorneys fees.

### ORDER DISMISSING COUNTS IV AND V

This adversary proceeding came before the Court for a trial held December 12, 1995. At the conclusion of the evidence presented by Plaintiff, Charles W. Grant, Trustee, the Defendants, Lathan Construction Corporation, Michael Oehlerking, and Leven H. Ozcel d/b/a Castlerock Landfill, moved for a dismissal of Counts IV and V of Plaintiff's Complaint. Upon the evidence presented, it is Ordered:

Counts IV and V of Plaintiff's Complaint are dismissed with prejudice.