**In re YATES DEVELOPMENT,
INC., Debtor.**

**Yates Development, Inc., Plaintiff,**

**v.**

**Old Kings Interchange, Inc., Defendant.**

**Bankruptcy No. 98–06579–BKC–3P1.
Adversary No. 99–171.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Nov. 18, 1999.

David W. Talbert, II, Jacksonville, FL, for Plaintiff.

Betsy Cox Mahin, Robert Altman, Jacksonville, FL, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Chief Judge.

This proceeding came before the Court upon cross Motions for Summary Judgment filed by Plaintiff, Yates Development, Inc. ("Yates"), and Defendant, Old Kings Interchange, Inc. ("Old Kings"). Yates, in

its Amended Complaint, and Old Kings, in its Counterclaim, requested that the Court declare their rights and obligations under a Settlement and Option Agreement dated May 22, 1998 (the "Option Agreement"), and specifically declare whether or not Paragraph 12 of the Option Agreement is enforceable. After a hearing on September 30, 1999, the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. The facts underlying this proceeding are not in dispute. Pursuant to the Option Agreement, Old Kings, as Optionor, granted Yates, as Optionee, two exclusive options, one to purchase a 500–acre parcel of real property in Flagler County, Florida, and a second option to purchase a 210–acre parcel. Yates subsequently exercised the first option and purchased the 500–acre parcel.

2. Paragraph 4 of the Option Agreement provides as follows as to the second option (the "Second Option") to purchase the 210–acre parcel (the "Property"):

4. *SECOND OPTION.* Provided Optionee has timely exercised the First Option and purchased the First Option Property as described above, Optionee shall retain the exclusive option to purchase the balance of the Property as described in Exhibit "C" ("Second Option Property") for the sum of Two Million Eighty Thousand Dollars and NO/100 ($2,080,000.00) plus the Additional Sum. Said Second Option shall expire on August 15, 1998, at 6:00 p.m. All payments by the Optionee shall be by official bank check, cashier's check or wire transfer of funds. In the event the Optionee fails to exercise the First Option, then this Second Option shall be null and void. Optionee shall notify Optionor in writing by facsimile as to the date Optionee intends to exercise the Second Option.

The "Additional Sum" referred to in this paragraph is defined in Paragraph 3 of the Option Agreement as the sum of $1,000.00 per day from May 15, 1998 until the Closing on the first option.

3. The obligations of Old Kings under the Option Agreement not to further encumber the Property and not to sell or attempt to sell any portion of the Property to any third party during the term of the Option Agreement are set forth in Paragraph 8 of the Agreement. Old Kings' compliance with these obligations has not been questioned. Paragraph 8 further provides that Old Kings' covenant not to sell or encumber the Property is a material inducement to Optionee to enter into this Agreement and to pay the Option Prices hereunder.

4. On August 14, 1998, the day before the Second Option expired, Yates filed a voluntary petition under Chapter 11 of the Bankruptcy Code. By operation of 11 U.S.C. § 108(b), Yates' right to exercise the Second Option was extended for sixty (60) days.

5. On October 13, 1998, the day Yates' right to exercise the Second Option under 11 U.S.C. § 108(b) expired, Yates filed a motion to assume the Option Agreement under 11 U.S.C. § 365 in order to subsequently exercise that option.

6. On December 22, 1998, after hearings on December 15 and 18, 1998, this Court entered an order denying Yates' motion to assume, concluding that Yates did not have the ability to exercise the option.

7. On March 3, 1999, Yates filed a renewed motion to assume the Option Agreement, and after hearings on March 12, 1999 and April 15, 1999, this Court granted that motion and authorized Yates to assume the Option Agreement by Order dated April 29, 1999.

8. The Option Agreement contains a "Time of the Essence" clause in Paragraph 12, which states as follows:

12. *TIME OF THE ESSENCE:* Time shall be of the essence with respect to

each provision of this Agreement that requires action to be taken by either party within a stated period of time, or upon a specified date. Notwithstanding the foregoing, if for any reason this Option Agreement is extended beyond August 15, 1998 and Optionee is entitled to exercise the Option beyond the August 15, 1998 date, then the Purchase Price shall be increased by the sum of Five Thousand Dollars and NO/100 ($5,000.00) per day for every day after August 15, 1998 until the ultimate Closing Date.

9. On June 7, 1999, Yates filed a Complaint to Obtain Declaratory Judgment in which it requests that the Court relieve it of the requirement in Paragraph 12 to pay the $5,000.00 per day increase in the purchase price in order for Yates to purchase the Property after August 15, 1998. Yates subsequently was given leave to file an Amended Complaint.

10. Yates characterizes Paragraph 12 of the Option Agreement as a "Penalty Clause" which, Yates argues, impermissibly modifies its rights under the Option Agreement by virtue of its filing a bankruptcy case and therefore violates 11 U.S.C. § 365(e)(1). Yates thus seeks to have this Court declare Paragraph 12 void and unenforceable so that it can purchase the Property for the base price of $2,080,-000.00 plus the Additional Sum. Yates alternatively contends that Paragraph 12 imposes a penalty upon it for failure to exercise the option on August 15, 1988 and that this "penalty" does not have to be satisfied under 11 U.S.C. § 365(b)(2)(A). Yates also asserts that Paragraph 12 is an unenforceable liquidated damages provision under Florida law.

11. In its Counterclaim for declaratory relief filed on July 8, 1999, Old Kings contends, on the other hand, that in order for Yates to exercise the Second Option and purchase the Property, the requirement in the Option Agreement that Yates pay Old Kings the sum of $2,080,000.00, the Additional Sum, *and* $5,000.00 per day

from August 15, 1998 until the Closing Date, is enforceable as written. Old Kings further disagrees with Yates' interpretation of applicable law, asserting that the Paragraph 12 "Time of the Essence" clause is not an *ipso facto* clause within the purview of 11 U.S.C. § 365(e)(1) nor a penalty within the meaning of 11 U.S.C. § 365(b)(2)(D), or a provision which is void and unenforceable under other applicable law.

12. Old Kings pled as an affirmative defense that the Option Agreement represents the full and complete agreement of the parties and its clear and unambiguous terms, including Paragraph 12, cannot be modified by parol or extrinsic evidence offered by Yates to contradict, vary, subtract from or add to its terms.

13. Old Kings asserted as a second affirmative defense that Yates' attempt to exclude Paragraph 12 because Yates filed bankruptcy and did not exercise the Second Option by August 15, 1998 is barred by the "Integration" clause incorporated in Paragraph 13 of the Option Agreement, which provides as follows:

13. ***INTEGRATION:*** This Option Agreement sets forth the entire agreement between the parties and there are no representations, agreements, arrangements or understandings, oral or written, between the parties relating to the subject matter of this Agreement, which are not fully expressed herein. This Agreement may not be changed or terminated orally or in any manner other than by a written agreement executed by both parties.

14. In response to the Amended Complaint, Old Kings raised two additional affirmative defenses, failure to state a claim for relief and estoppel by pleadings, or judicial estoppel, as to the applicability of 11 U.S.C. § 365(b)(2)(D). Old Kings' position was based on Yates' failure to allege a default under the Option Agreement, either in its two motions to assume the Agreement or in the Amended Complaint,

since Section 365(b) applies only if a debtor is in default of an executory contract at the time of assumption of that contract.

## CONCLUSIONS OF LAW

Summary judgment is appropriate if there are no genuine issues of material fact to be decided at trial so that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c), applicable to adversary proceedings in bankruptcy cases pursuant to FED.R.BANKR.P. 7056; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In the present proceeding, not only are there no material facts in dispute, but the issue presented to this Court of the enforceability of Paragraph 12 of the Option Agreement is a question of law.[1]

■■■ The well-established principle in the Eleventh Circuit is that contract interpretation is generally a question of law. *Lawyers Title Insurance Corp. v. JDC (America) Corp.,* 52 F.3d 1575, 1580 (11th Cir.1995) (affirming summary judgment in declaratory action involving interpretation of coverage provisions of insurance policy). The interpretation or construction of a written contract is particularly suitable for summary judgment. *Central National Bank v. Palmer,* 806 F.Supp. 253, 256 (M.D.Fla.1992). Questions of fact arise *only* if there is an ambiguity in a contract term. *Lawyers Title,* 52 F.3d at 1580. An ambiguity does not exist merely because a contract can be interpreted in more than one manner. *Id.* However, if there is a genuine inconsistency, uncertainty or ambiguity in meaning after resort to ordinary rules of construction under applicable state law, than an ambiguity exists. *Id.* For instance, an ambiguity exists if a contract contains conflicting or repugnant clauses.

*In re Finevest Foods, Inc.,* 159 B.R. 972, 978 (Bankr.M.D.Fla.1993).

Yates and Old Kings agree that Paragraph 12 is not ambiguous. Therefore, the issue presented to this Court is one of law, not fact and therefore, the issue is ripe for decision by summary judgment.

■■■ After stating that "[t]ime shall be of the essence" with respect to each provision of the Agreement which requires action within a stated period of time, Paragraph 12 requires that Yates pay Old Kings an additional $5,000.00 in purchase money per day if "for *any* reason" the Second Option is extended and Yates is entitled to exercise the option beyond the August 15, 1998 deadline. (Emphasis added). As this Court recognized, Florida law requires that a "contract be construed according to its clear and unambiguous terms." *In re Construction Contractors of Ocala, Inc.,* 196 B.R. 188, 192 (Bankr. M.D.Fla.1996). In the absence of an ambiguity, the actual language used in the contract is the best evidence of the intent of the parties and the plain meaning of that language controls. *In re Atkins,* 228 B.R. 14, 18 (Bankr.M.D.Fla.1998).

■■■ Section 365(a) of the Bankruptcy Code allows a trustee or debtor in possession, "subject to the court's approval, [to] assume or reject any executory contract or unexpired lease of the debtor."[2] An executory contract may not be assumed in part and rejected in part. In other words, a debtor or trustee cannot choose to accept the benefits or desirable features of the contract and reject the burdens or undesirable aspects of the contract to the detriment of the other contracting party. *Richmond Leasing Co. v. Capital Bank,* 762 F.2d 1303, 1311 (5th Cir.1985); *In re Auto Dealer Services,*

1. Old Kings moved for summary judgment in its favor on the entirety of its Counterclaim and Yates' Amended Complaint. Yates' motion, however, did not request entry of summary judgment in its favor if Paragraph 12 is construed as a liquidated damages provision. As Yates' counsel stated at the September 30,

1999 hearing, if the Court construed Paragraph 12 in that manner, Yates' position was that a triable issue of fact would be created as to the enforceability of Paragraph 12 as a liquidated damages provision.

2. *See* 11 U.S.C. § 365(a) (West 1999).

*Inc.,* 65 B.R. 681, 684 (Bankr.M.D.Fla. 1986). In assuming the Option Agreement, Yates therefore became liable for the performance of the entire agreement, as if bankruptcy had never intervened. *See In re Airlift International, Inc.,* 761 F.2d 1503, 1508 (11th Cir.1985).

The Bankruptcy Code alters certain rights of parties to contracts. Yates asserts that Paragraph 12 of the Option Agreement is unenforceable and void under 11 U.S.C. § 365(e)(1). That section provides as follows:

Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—

(A) the insolvency or financial condition of the debtor at any time before the closing of the case;

(B) the commencement of a case under this title; or

(C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

Paragraph 12 is not an *ipso facto* or other clause unenforceable under Section 365(e)(1).[3] This section expressly invalidates *ipso facto* and other clauses which automatically terminate or modify a contract or lease upon a bankruptcy filing or permit the non-debtor party to terminate or modify the contract or lease in the event of bankruptcy. These termination clauses are invalidated because they deprive the Chapter 11 estate of valuable property rights, such as the opportunity to receive the benefits of a contract, at the very time the debtor and the estate may need these rights the most in order to further rehabilitation efforts. *Summit Inv. & Dev. Corp. v. Leroux,* 69 F.3d 608, 610 (1st Cir.1995); S.Rep. No. 989, 95th Cong., 2nd Sess. 59 (1978); 3 Lawrence P. King, *Collier on Bankruptcy,* § 365.07 (15th Rev.Ed.1999). Section 365(e)(1) also expressly applies to provisions conditioned on the debtor's insolvency or financial condition or on the appointment of a trustee or custodian, provisions which do not mention bankruptcy but have the same effect as a clause triggered by a bankruptcy filing.

The plain language of Paragraph 12 of the Option Agreement shows that the requirement for Yates to pay Old Kings $5,000.00 per day in increased purchase price from August 16, 1998 until the ultimate closing date, if Yates is allowed to extend the Second Option beyond August 15, 1998, applies regardless of whether Yates files bankruptcy before that option is exercised. As set forth in Paragraph 12, time is of the essence and the purchase price for Yates increases if Old Kings must continue to give Yates an exclusive option to purchase the Property beyond the August 15, 1998 deadline. Section 365(e) does not invalidate that provision.

Yates argues that the Court should focus on the operation of Paragraph 12 and how its operation violates Section 365(e)(1). Yates claims that the only way it was guaranteed an extension of the option beyond August 15, 1998 was to file bankruptcy and utilize 11 U.S.C. § 108(b) to get additional time for exercise of the option. Since Paragraph 12 imposed the $5,000.00 per day addition to the purchase price, Yates claims that it shows Old Kings' intent to strongly discourage Yates from

---

**3.** In contrast to Paragraph 12, Paragraph 16C. of the Option Agreement contains the type of *ipso facto* clause unenforceable under § 365(e)(1). It states in pertinent part that: "should the Owner or Optionee file any action, appeal or bankruptcy petition, this Option shall be automatically terminated." Old Kings has not attempted to invoke the portion of Paragraph 16C. providing that the option shall be automatically terminated upon Yates filing a bankruptcy petition and has acknowledged that this clause is unenforceable.

filing bankruptcy. Therefore, Yates claims that Paragraph 12 modified its right to purchase the Property in an impermissible way upon its filing bankruptcy. In so arguing, Yates not only seeks an unwarranted expansion of 11 U.S.C. § 365(e)(1), but, for this Court to adopt Yates' position would require the Court to go beyond the plain meaning of the language of Paragraph 12 and read additional terms into that paragraph to give it the meaning Yates urges. The Court finds Yates' position to be without merit.

■■■ Under the parol evidence rule, evidence of prior or contemporaneous oral statements or agreements cannot be introduced to vary, contradict or affect the unambiguous language of a valid contract. *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1308 (11th Cir.1998); *In re Atkins,* 228 B.R. at 18. Yates requested the Court consider testimony of Michael Chiumento, an officer of Old Kings, given at previous hearings on Yates' motions to assume the Option Agreement, and an affidavit of Andrew Jacobson, Yates' attorney involved in negotiating and drafting the Option Agreement, to show that the parties included Paragraph 12 due to Old Kings' concern that Yates would file bankruptcy. Contrary to Yates' assertion, Mr. Chiumento's testimony in question related to negotiations of the parties leading up to the Option Agreement and thus their intent before the Option Agreement was finalized. That testimony and the statements of Mr. Jacobson in his affidavit are exactly what the parol evidence rule bars. *See Singer Island Civ. Ass'n v. Casetta, Ltd.,* 527 So.2d 861, 862 (Fla.App.4th Dist.1988). With an unambiguous contract like the Option Agreement, the best evidence of the parties' intentions is the actual language used in the contract. *See Atkins,* 228 B.R. at 18. Subsequent oral statements or actions of parties to ascertain their intent in entering into a contract should be considered only if a contract is ambiguous. *See In re Yarn*

*Processing Patent Validity Litigation,* 462 F.Supp. 340 (S.D.Fla.1978).

■■■ As recognized by the Eleventh Circuit in *Johnson Enterprises,* one way in which parties to a contract demonstrate their intent that the written contract incorporate their final and complete agreement, such that evidence of prior or contemporaneous agreements is not admissible to contradict the terms of the contract, is through the use of a merger or integration clause. *Johnson Enterprises,* 162 F.3d at 1308. The Paragraph 13 "Integration" clause shows on its face that the parties clearly intended that the Option Agreement incorporate their final and complete agreement. This integration clause further supports the application of the parol evidence rule to bar Yates' attempts to introduce evidence in an effort to modify the clear language in the Option Agreement. Moreover, even if the Court considered the affidavit and prior testimony, simply because the parties considered bankruptcy when drafting paragraph 12 does not make the provision an *ipso facto* clause. This Court has previously held that a pre-petition waiver of the automatic stay is not an *ipso facto* clause, and is enforceable under basic contract principles, *see In re Citadel Properties, Inc.,* 86 B.R. 275 (Bankr.M.D.Fla.1988); and a pre-bankruptcy stay waiver is specifically entered into because of a lender's concerns that a borrower may file for bankruptcy protection. The bankruptcy filing did not modify the contract; Yates' failure to close on the Property by August 15, 1998 did.

■■■ Yates also argues that due to its utilization of Section 108(b) to provide it with sixty (60) extra days to exercise the Second Option after filing its petition, its assumption of the Agreement relates back to the August 14, 1998 filing date. As a result, Yates claims that it effectively exercised the Second Option before it expired and therefore, does not have to pay the $5,000.00 increase in the purchase price. Accepting that argument would require the Court to ignore the plain meaning of

the portion of Paragraph 12 which requires the increase in the purchase price to be paid "for every day after August 15, 1998 until the ultimate Closing Date." Yates confuses the date the Second Option could be deemed to be exercised with the ultimate closing date.

■ Yates further claims that Paragraph 12 is unenforceable under 11 U.S.C. § 365(b)(2)(D) because the $5,000.00 per day increase in the purchase price is a penalty imposed on Yates for its failure to timely exercise the Second Option. Section 365(b)(1) of the Bankruptcy Code requires a trustee to cure a default or provide adequate assurance of a prompt cure of the default in order to assume an executory contract or lease. Section 365(b)(2) excuses a trustee from curing a default in order to assume the contract or lease under certain enumerated circumstances. Subparagraphs (b)(2)(A)(B) and (C) mirror the provisions of Section 365(e)(1) and provide that defaults in contracts relating to the debtor's insolvency or financial condition, the filing of the bankruptcy case itself, or the appointment of a trustee or custodian before the case is filed do not have to be cured. This exception to the general rule requiring the cure of defaults furthers the bankruptcy policy of preventing the enforcement of *ipso facto* or bankruptcy termination clauses. 3 Lawrence P. King, *Collier on Bankruptcy,* § 365.05[4] (15th Rev.Ed.1999). Subparagraph 365(b)(2)(D) was added by the Bankruptcy Reform Act of 1994 to make it clear that in curing a default in order to assume the contract, the trustee also does not have to satisfy "any penalty rate or any provision relating to a default arising from any failure by the debtor to perform non-monetary obligations." *Id.*

■ Paragraph 12 does not appear to relate to the satisfaction of a penalty rate or provision under Section 365(b)(2)(D) and therefore be covered by this section of the Code. However, this Court need not make that determination because the record is without dispute that Yates had *not*

defaulted under the Option Agreement as of August 14, 1998, the date Yates filed its petition, or at any time after August 14, 1998. Section 365(b), by its express terms, can only apply if there has been a default in an executory contract. The existence of a default under an executory contract is a statutory condition precedent to the invocation of the protection of Section 365(b)(2), and as raised by Old Kings in its affirmative defense, Yates failed to allege any default under the Option Agreement in its Amended Complaint. Moreover, the issue of a default under the Option Agreement was never presented to the Court by Yates in either of its previous motions to assume the Agreement and was not addressed in this Court's ruling authorizing assumption of the Agreement. Yates affirmatively stated in Paragraph 7 of its Motion to Assume Executory Contract filed on October 13, 1998 that "[u]nder 11 U.S.C. § 365, Debtor is *not* in default under the terms of the Agreement." (Emphasis added). Yates also failed to allege in its Renewed Motion to Assume Executory Contract filed on March 3, 1999 that there was a default under the Option Agreement. Moreover, if Yates had been in default under any provisions of the Option Agreement, those defaults had to have been brought to this Court's attention before the Court approved the assumption of the Option Agreement, and Yates would have been required to (1) cure the defaults or provide acceptable arrangements for cure, and (2) provide adequate assurances of no further defaults. Yates did neither.

The Court does not accept Yates' claim in its memorandum of law that Section 365(b) applies to the Option Agreement because Yates' failure to accept the Second Option by 6:00 p.m. on August 15, 1998 was a post-petition default. Yates claims that a consequence of that default was a requirement to provide Old Kings with a title policy under Paragraph 16F of the Option Agreement. Yates further claims that the default, including the obligation to supply the title policy, was cured by Yates

filing the motion to assume the Agreement under 11 U.S.C. § 108(b). Yates' argument of a default ignores the nature of an option contract. The Option Agreement, like any option contract, gives Yates the right to exercise the Second Option by August 15, 1998, but does not require or obligate Yates to exercise the Second Option. Under the specific terms of the Option Agreement, there was no breach of any duty or obligation of Yates under the Agreement and thus, no default by virtue of Yates not timely exercising the Second Option.

In addition, Yates is not permitted under the parol evidence rule and the "integration" clause in Paragraph 13 of the Option Agreement to introduce parol or extrinsic evidence in an effort to vary or contradict the clear language of Paragraph 12 in order to bring it within the meaning of Section 365(b)(2)(D).

 Paragraph 12 of the Option Agreement is enforceable in all respects under general principles of Florida contract law. The cardinal rule of contract construction is that the intention of the parties governs. *Dune I, Inc. v. Palms North Owners Ass'n*, 605 So.2d 903, 905 (Fla.App.1st Dist.1992). As the Eleventh Circuit has recognized in applying Florida law, merely because Yates may now consider that it made an improvident bargain from which it would like to be excused, it is not the function of the courts to "rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties" to the contract for the purpose of relieving one of the parties from the "apparent hardship of an improvident bargain." *Marriott Corp. v. Dasta Construction Co.*, 26 F.3d 1057, 1068 (11th Cir.1994) (citing *Steiner v. Physicians Protective Trust Fund*, 388 So.2d 1064, 1066 (Fla.App.3rd Dist.1980)).

 Paragraph 12 of the Option Agreement leaves no doubt that Old Kings was willing to be bound by a purchase price of $2,080,000.00 for the Property and give Yates an exclusive option to buy it at that price *only* if the option was exercised quickly: within three months of entering into the Option Agreement. The parties' intent to make certain that if Yates did not timely exercise this option by August 15, 1998, Yates would have to pay $5,000.00 in additional purchase price for each day the stated deadline was extended until the Ultimate Closing Date, is underscored by the placement of this provision in the paragraph titled "Time of the Essence" following the initial sentence of that paragraph which states that:

> Time shall be of the essence with respect to each provision of this Agreement that requires action to be taken by either party within a stated period of time, or upon a specified date.

As this Court previously ruled in upholding the termination of a subcontract which stated that time was of the essence and that extensions were available only on written request, contract terms which make time of the essence are enforceable in equity under Florida law. *Construction Contractors*, 196 B.R. at 192.

 Old Kings has been required under the covenant it made in Paragraph 8 of the Option Agreement to continue to provide Yates with an exclusive option to purchase the Property and not to sell, or even attempt to sell, the Property to a third party for well over one year. In exchange for that material consideration, Yates is bound by its express agreement to pay the $5,000.00 per day additional purchase price for the Property. Requiring Yates to abide by this agreement is consistent with the obligations routinely imposed upon an optionee under the following well-settled Florida law:

> In order to properly exercise the option to purchase under an option contract, thus imposing a duty on the vendor to convey the land in accordance with the terms and conditions provided therein, the vendee must strictly comply with the applicable provisions of the contract. *Orlando Realty Board Bldg. Corp. v.*

*Hilpert,* 93 Fla. 954, 113 So. 100 (1927) It is necessary that the optionee accepts the terms of the option unqualifiedly, and it is generally held, not only in law, but also in equity, that the time named in the option contract is to be regarded as of the essence of the option, whether expressly stated or not, and if not exercised within the time limit, the rights of the optionee expire.

*Mathews v. Kingsley,* 100 So.2d 445, 446–47 (Fla.App.2d.Dist.1958).

The Court agrees with Old Kings that enforcement of the payment requirement in Paragraph 12 should be considered no different from the requirement in Paragraph 3 of the Option Agreement that Yates is required to pay the Additional Sum of $1,000.00 per day from May 15, 1998 until the closing on the first option. Yates has not objected to that obligation for paying a higher purchase price in exchange for obtaining an extension of time for purchasing that property. The increase in the purchase price in both Paragraphs 3 and 12 are bargained for, explicit and unambiguous terms of the Option Agreement.

Yates' final argument is that Paragraph 12 is an unenforceable liquidated damages provision under Florida law because it is grossly disproportionate to any actual damages which could have been suffered by Old Kings in the event that the option was extended past August 15, 1998. Paragraph 12, however, makes no mention of liquidated damages and should not be construed as a liquidated damages clause under Florida law.[4] Contracts containing liquidated damages clauses, such as a real estate purchase agreement or a lease, specifically state that if one party breaches the contract, the other party can retain or be paid a specified amount as liquidated damages. The liquidated damages are agreed upon in lieu of the non-breaching party being able to sue for actual damages. *See Lefemine v. Baron,* 573 So.2d 326 (Fla.1991). In the present proceeding, Yates did not have the duty or obligation to exercise the Second Option and purchase the Property and as a result, has not breached any duty or obligation under the Option Agreement. Old Kings is seeking to enforce the parties' clear intent set forth in Paragraph 12 that in order for Old Kings to continue to hold the purchase option open for Yates beyond the stated deadline, Yates is required to pay an additional $5,000.00 per day. Old Kings thus is seeking to enforce the agreed upon purchase price for the Property, not damages for breach of a purchase agreement.

## CONCLUSION

Old Kings is entitled to a summary judgment in its favor and against Yates on both the Amended Complaint and the Counterclaim declaring that Paragraph 12 of the Option Agreement shall be enforced in accordance with its terms, including without limitation, the addition of $5,000.00 per day to the purchase price for the Property from August 16, 1998 through ultimate closing date on the Property. Yates' motion for summary judgment will be denied. A judgment in accordance with these findings of fact and conclusions of law will be separately entered.

---

4. Old Kings argued in the alternative that even if Paragraph 12 could be considered as a liquidated damages provision, this paragraph is enforceable as a matter of law when the Court applies to the facts of this proceeding the test in Florida for establishing when a liquidated damages provision will be upheld and not stricken as an impermissible penalty. Yates, on the other hand, argued that a fact issue would be created on this issue because if the $5,000.00 per day provision applied, Yates would have to pay an effective "interest" rate of 88% if it closed on the Property now and argued that such a sum would shock the conscience of the Court. In concluding that Paragraph 12 is not a liquidated damages provision, the Court does not need to reach this issue.