## In re TUT'S PYRAMID, INC., Debtor.

### Bankruptcy No. 94–10487–8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 2, 1995.

James M. Heptner, Tampa, FL, for debtor.

Nancy G. Farage, Tampa, FL, for respondent.

## ORDER ON MOTION TO ASSUME COMMERCIAL BUSINESS LEASE

·ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a Motion To Assume Commercial Business Lease filed by the Debtor on November 23, 1994. On December 14, 1994, Sam Verkauf and M. Verkauf Sons Properties, as Landlord, filed a Response to the Motion to Assume and Objection to the Assumption of the Commercial Business Lease.

It appears from the evidence and testimony established at the final evidentiary hearing that the facts relevant to the resolution of this controversy are as follows:

On August 1, 1992, a partnership known as M. Verkauf Sons, as Landlord, entered into a written Lease Agreement with Stephen Prevatt and Ignacio Almorza as Lessees. (Debtor's Exhibit No. 1) The Lease covers approximately 2500 square feet of rental space which occupies part of the first floor of a three story commercial building located on North Franklin Street in Tampa, Florida, and contains the following provisions:

1. The term of the Lease was to extend for a period of two years, commencing on August 1, 1992, and expiring on August 1, 1994.

2. The Lessees were to pay the sum of $1,400 per month, plus taxes, as rent for the premises. These payments were due on the first day of each month.

3. The premises were to be used for the operation of a restaurant and lounge.

4. The Landlord was responsible for maintenance of the roof, and the Lessees were responsible for essentially all other repairs and maintenance relating to the property.

5. The Lessees were granted an option to renew the Lease for one three-year term, provided certain conditions were satisfied.

The Lessees defaulted under the Lease by failing to pay various rental charges and related amounts due under the Lease, and also by failing to maintain insurance in effect as required under the Lease. In order to amicably resolve these matters, the Lease was amended by execution of an Amendment to Lease on March 22, 1994. (Debtor's Exhibit No. 1) The Debtor was the Lessee, and Stephen Prevatt and Thomas Ortiz, the President of the Debtor, were guarantors of the Lease as amended. In addition to the substitution of the Debtor as the Lessee, the Amendment to Lease provided in part:

1. The Landlord agreed not to terminate the Lease provided the defaults were cured as stated in the Amendment.

2. The term of the Lease was extended to October 31, 1994.

3. The Debtor was required to maintain liability insurance with specified coverage.

Paragraph 8 of the Amendment to Lease provides that, in the event that the Debtor fails to comply with either its monetary or nonmonetary obligations under the Amendment, "Lessee shall be in default under the terms of the Lease without further notice, and Landlord shall have the right to immediately institute action in the Court to recover possession of the leased premises and all other rights Landlord is entitled to under the Lease." Finally, Paragraph 9 of the Amendment alters the original option clause to state that, "Provided always Lessee shall not be in default in any respect under the Lease Agreement or this Amendment," the Debtor would have the option to renew the Lease for an additional two year period, which option must be exercised with written notice to the Landlord no later than 90 days prior to October 31, 1994.

It is without dispute that the Debtor did not pay the rent which became due on June 1, 1994. On June 7, 1994, after the Debtor was already in default, it appears that a leak developed in the roof of the building. The Debtor contends that as the result certain musical equipment located on the premises suffered extensive water damage, and that its cost to repair this equipment was approximately $6,000. The evidence in this regard is conflicting, not only as to whether the musical equipment was actually located on the site as claimed by the Debtor, but also as to the value of any such equipment and the extent of any damage actually incurred. In any event, the evidence is clear that the Debtor failed to make the rental payments due for June, July, and August, 1994, that no payments have been made since that time which became due before the alleged roof leak.

Nevertheless, the Debtor claims that it had the right to exercise the option and that it did in fact exercise the option to renew the Lease by virtue of a letter dated July 22, 1994. (Debtor's Exhibit No. 2) In this letter, which was signed by Thomas Ortiz as President of the Debtor, the Debtor purports to exercise the option contained in Paragraph 9 of the Amendment to Lease and according to the Debtor the Lease term was extended to October 31, 1996.

There is no competent evidence, however, that this letter was ever delivered to the Landlord. According to Mr. Ortiz he placed the letter into the Landlord's mailbox located on the curb next to the driveway. The evidence is undisputed that the Landlord never had a mailbox at the curb and his mailbox was at all times on the wall of the building on the porch. Thus, this Court is satisfied that the purported renewal of the option (Debtor's Exhibit No. 2) was never delivered to the Landlord. In the meantime, as stated above, the Debtor failed to make the rental payments due on June 1, July 1, and August 1, 1994.

On August 24, 1994, counsel for the Landlord issued a Notice of Default to the Debtor. (Landlord's Exhibit No. 3) In that letter, the Landlord notified the Debtor that it was in default for the months of June, July, and August 1994, and that other related charges were also owed to the Landlord. The letter further states that, "Demand is hereby made that you pay the amount due or deliver possession of the premises to the undersigned, the attorneys for Landlord, within three days." The letter also informed the Debtor that the Landlord required prompt payment

of all future rent and other obligations under the Lease. The Debtor neither paid the amounts set forth in the letter nor surrendered the premises to the Landlord. No action was commenced by the Landlord to recover possession of the property.

The Debtor filed its voluntary Petition under Chapter 11 on October 28, 1994, and filed the Motion to Assume the Commercial Business Lease on November 23, 1994. The Debtor asserts that it was entitled to abate its rental payments because of the continuing leaks in the roof causing the water damage suffered on June 7, 1994. According to the Debtor, it was entitled to, and did in fact, exercise its option to renew the Lease on July 22, 1994. Consequently, the Debtor contends that the Lease was still in full force and effect on the date that the Chapter 11 Petition was filed and therefore it is entitled to assume the lease pursuant to § 365(b)(1) of the Bankruptcy Code.

In opposition to the Debtor's Motion to Assume, the Landlord asserts that the Lease had been effectively terminated prior to the filing of the Chapter 11 Petition by virtue of (1) the provision for "automatic" termination contained in Paragraph 8 of the Amendment to Lease; (2) the letter dated August 24, 1994, notifying the Debtor of the existing default; and (3) the Debtor's inability to exercise the option on July 22, 1994, because of its outstanding default. Based on the foregoing, the Landlord contends that the Lease was effectively terminated prior to the commencement of the Chapter 11 case and thus was no longer property of the Debtor's estate by virtue of § 541(b)(2) and, therefore, no longer assumable. In the alternative, the Landlord asserts, even if the Lease had not terminated prepetition, the Debtor is unable to promptly cure all defaults and provide adequate assurance of future performance as required under § 365(b)(1)(A)(C).

■ The Court has considered the evidence and record and finds that the Lease was not effectively terminated prior to the filing of the Chapter 11 Petition pursuant to Paragraph 8 of the Amendment. This paragraph states only that noncompliance by the Lessee shall constitute an event of default entitling the Landlord to file a lawsuit to recover possession of the premises which the Landlord never did. There is no clear language in this Paragraph which provides for termination of the Lease and no language that is intended to be self-executing in the event of a default. This Court is satisfied that Paragraph 8 of the Amendment is legally ineffective to terminate the Lease.

■ Next, the Landlord's letter to the Debtor dated August 24, 1994, was also ineffective to terminate the Lease. This letter not only does not contain any language to effect a termination, but neither does it reflect any intent to terminate the Lease. On the contrary, the letter simply demanded payment of the arrearage and notified the Debtor that the Landlord will insist on prompt compliance with the terms of the Lease in the future. Instead of terminating the Lease, the letter appears to contemplate an ongoing contractual relationship between the parties.

■ Although the Landlord did not effectively terminate the Lease prior to the filing of the Bankruptcy Petition, this Court also finds that the Debtor had not exercised its option to renew the Lease by giving written notice to the Landlord, as required under Paragraph 9 of the Amendment. That Paragraph provides that the option "must be exercised with written notice to the Landlord." As set forth above, the Debtor claims that it exercised the option by virtue of its letter dated July 22, 1994. There is absolutely no evidence in the record, however, that this letter was ever actually delivered to the Landlord. The Landlord denied that he ever received the letter, and even the Debtor's testimony completely fails to establish such delivery. Consequently, this Court finds that the Debtor did not exercise the option to renew the Lease pursuant to Paragraph 9 of the Amendment.

Further, this Court is equally satisfied that the Debtor was not entitled to exercise the option to renew contained in the Amendment. In any event, Paragraph 9 of the Amendment grants the option to renew the Lease only on the express condition that "Lessee shall not be in default in any respect under the Lease Agreement or this Amend-

ment." It is undisputed that no rent had been paid for June 1, 1994, or July 1, 1994, at the time that the Debtor allegedly sought to exercise the option on July 22, 1994. Thus, according to the clear contractual provisions, the Debtor had no right to renew the Lease for the additional two-year period.

The Debtor claims that it was entitled to exercise the option, notwithstanding its nonpayment of rent, because it had been excused from its obligation to pay rent as a result of the roof leaks and water damage that occurred on June 7, 1994. The payment due on June 1 was already overdue at the time that any damage was sustained, of course, and this Court is not convinced by the evidence of the extent, or even the existence, of such water damage. Moreover, even if damage were found, the Debtor would have no right to abate the rent completely, but only to offset the established amount of the damages against the arrearages owed for prior defaults. The Lessee's promise to pay rent is generally independent of the Landlord's promise to perform repairs, so that the failure of the Landlord to make such repairs does not relieve the tenant from his liability for rent. *City of Miami Beach v. Ellis,* 279 So.2d 335 (Fla. 3d DCA 1973); 49 Am Jur 2d, *Landlord & Tenant,* §§ 613–615. The Debtor had no justification for its continuing failure to make payments. Consequently, the Lease was in default as of July 22, 1994, and the Debtor was not entitled to renew the agreement because the express condition to such renewal, full compliance with the Lease, had not been satisfied.

Since the option was not effectively exercised, the Lease as amended expired according to its terms on October 31, 1994. The Chapter 11 Petition was filed only three days earlier on October 28, 1994. Nothing contained in the Bankruptcy Code provides the Debtor with any rights greater than those which it had acquired under its contract. The Debtor therefore may not extend the Lease beyond its contractual term, and this Court finds that it expired by its terms on October 31, 1994. Because the Lease expired naturally three days after the Bankruptcy Petition was filed, with no remaining mechanism for extension, the Debtor's Mo-

tion to Assume the Lease should be denied on the basis that there is no longer an assumable Lease.

Furthermore, even assuming that the option had been effectively exercised so that a meaningful term remained on the Lease as of the Petition date, this Court finds that the Debtor has failed to satisfy the requirements set forth in § 365(b)(1) of the Bankruptcy Code for assumption of the Lease. It appears that the Debtor failed to make the prepetition payments due from June 1, 1994, through October 1, 1994. Even more importantly, it further appears that the Debtor did not make the postpetition payments due on November 1, 1994, and December 1, 1994. In its Motion to Assume the Lease, the Debtor has proposed no mechanism either to cure the prepetition arrearage or to provide adequate assurance of performance in the future. Given the absence of performance for a period of over six months, including the postpetition period, combined with the Debtor's inability to establish that it will be able to perform in the future, this Court finds that the Debtor has not met the requirements for assumption under § 365(b)(1), and the Motion to Assume Commercial Business Lease should therefore be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Assume Commercial Business Lease filed by the Debtor be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that the Debtor is hereby provided fifteen (15) days from the date of this Order within which to vacate the premises subject to the Lease.

DONE AND ORDERED.