**In re C.A.F. BINDERY, INC., Debtor.**

**Bankruptcy No. 95 B 44761 (SMB).**

United States Bankruptcy Court, S.D. New York.

Aug. 27, 1996.

As Corrected Sept. 4, 1996.

Finkel Goldstein Berzow & Rosenbloom, New York City (Gary I. Selinger, of counsel), for Debtor.

Jaffe, Segal & Ross, New York City (Burton R. Ross, of counsel), for the Landlord.

### MEMORANDUM DECISION GRANTING MOTION TO COMPEL PAYMENT OF POST–PETITION RENT

STUART M. BERNSTEIN, Bankruptcy Judge.

C.A.F. Bindery, Inc. (the "debtor") occupies nonresidential space pursuant to a lease (the "Lease") with Marburt Holding Corp. ("Marburt" or the "landlord"). The Lease grants a three month rent concession during the postpetition period provided the debtor is not then in default. Ignoring its continuing prepetition rent default, the debtor "took ad-

vantage" of the concession, and did not pay the fixed rent during the concession period.

Marburt has now moved to compel payment, arguing that the debtor was not entitled to the concession and must pay the administrative rent in a timely fashion pursuant to 11 U.S.C. § 365(d)(3). Alternatively, Marburt seeks relief from the automatic stay to pursue state court eviction proceedings. The debtor opposes the motion, and has moved to assume the Lease, or alternatively, to cure the prepetition arrears under the "doctrine of necessity" prior to formal assumption. On July 9, 1996, I denied the debtor's motion to assume the Lease, without prejudice, requested further briefing from the parties, and reserved decision on the landlord's motion as well as the debtor's motion to cure the default immediately and prior to assumption. I now conclude that Marburt is entitled to the immediate payment of the rent that accrued during the three month concession period.

### FACTS

The facts of this matter are neither disputed nor complex. The debtor filed its chapter 11 petition on October 13, 1995. At all relevant times, it has operated a bookbinding business at premises located at 250 Hudson Street, New York, New York (the "Premises") pursuant to the Lease with Marburt that runs from March 1, 1995 to February 28, 2005. During the first five years, the debtor must pay fixed annual rent in the amount of $165,000.00, payable in monthly installments of $13,750.00. The Lease also requires the debtor to pay portions of the Premises' operating expenses and taxes.

The Lease grants rent concessions at the beginning and during the term of the Lease. Pertinent to the pending motion, Paragraph 53 of the Lease relieves the debtor of the obligation to pay fixed rent during the months of March through May 1996 "provided the tenant is not then in default under the Lease...." According to the landlord's submission, the debtor owed $16,069.48 on the petition date. This sum represented a July 1995 water charge ($1,773.51), a September 1995 sprinkler charge ($318.05), and October 1995 base rent ($13,750.00) and a water charge ($227.92). (*Application for an Order*

*to Vacate the Automatic Stay for Failure to Pay Post Petition Rent,* dated June 11, 1996 ("Marburt Application") at ¶ 4). The debtor eventually paid all but $1,639.01 [1], leaving the latter as the balance of the unpaid prepetition rent. *Id.* at ¶ 6. This sum appears to relate to the July 1995 water charge, the only aspect of additional rent that the debtor failed to pay on a substantially timely basis.

In any event, it is undisputed that the debtor was in default on the petition date, at least to the extent of $1,639.01, and that the default has continued. Despite the default, the debtor relied on the concession and failed to pay the base rent, aggregating $41,250.00, for March, April and May 1996. On March 29, 1996, Marburt's attorney wrote to debtor's counsel stating that the default (then calculated at $3,126.96) prevented the debtor from utilizing the concession, and demanded payment of the full rent. The landlord was apparently concerned that the debtor might reject the lease without ever curing the prepetition default, and stated that if the debtor assumes the Lease and cures the default, the debtor "may be entitled to the rent concession." (Marburt Application, Ex. C.) [2] The debtor's counsel wrote back that prior to assumption or rejection, the concession remained in effect, and implied that the prepetition default did not foreclose its availability. (*Id.,* Ex. D.).

The landlord formally raised the issue in opposing the debtor's motion to extend the time to assume or reject the Lease. Concluding that the issue should not be decided in the context of the extension motion, I granted the debtor's motion, and directed the landlord to file a motion to compel the payment of the administrative rent claim pursuant to 11 U.S.C. § 365(d)(3).

## DISCUSSION

### A. Introduction

Section 365(d)(3) states in pertinent part that the "trustee [or debtor-in-possession]

shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected...." 11 U.S.C. § 365(d)(3). This section was added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984. Although the legislative history on this section is sparse, Senator Orrin Hatch of Utah stated that the amendment was intended to remedy the problem of debtor-tenants not making payments due under a lease prior to deciding whether to assume or reject the lease:

> The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

130 Cong.Rec. S8887–8900 (daily ed. June 29, 1984) (statement of Sen. Hatch).

Thus, courts have repeatedly held that section 365(d)(3) requires the timely payment of postpetition use and occupancy as an administrative expense at the full contract rate. *See Towers v. Chickering & Gregory (In re Pacific–Atlantic Trading Co.),* 27 F.3d 401, 404 (9th Cir.1994); *Child World, Inc. v. Campbell/Massachusetts Trust (In re Child World, Inc.),* 161 B.R. 571, 575 (S.D.N.Y. 1993); *In re Financial News Network, Inc.,* 149 B.R. 348, 352 n. 4 (Bankr.S.D.N.Y.1993); *In re Wingspread Corp.,* 116 B.R. 915, 925 (Bankr.S.D.N.Y.1990). The debtor does not dispute this proposition, its failure to pay rent during the concession period or that prior to assumption or rejection, the terms of

---

**1.** The Marburt Application implies that the debtor cured the majority of the prepetition default on November 8, 1995 (after the commencement of this case) without assuming the Lease. This payment date may actually refer to the date that Marburt posted the debtor's payment rather than the actual date that the debtor made the payment. Neither side has raised the issue of improper payments.

**2.** At oral argument, Marburt's attorney represented that the debtor would receive the concession if it assumed the Lease, and cured the default at that time.

the Lease remain in effect. *United States Postal Serv. v. Dewey Freight Sys., Inc.*, 31 F.3d 620, 624 (8th Cir.1994); *Leslie Fay Cos. v. Corporate Property Assocs. 3 (In re Leslie Fay Cos.)*, 166 B.R. 802, 808 (Bankr.S.D.N.Y. 1994); *In re Village Rathskeller, Inc.*, 147 B.R. 665, 671 (Bankr.S.D.N.Y.1992) ("property comes into the estate true to its shape under nonbankruptcy law").

Instead, the debtor points to three reasons why it may nevertheless use the rent concession. First, the failure to pay the prepetition rent is not a default within the meaning of Paragraph 53. Second, the landlord's interpretation renders Paragraph 53 an unenforceable *ipso facto* clause. Third, it is legally impossible to cure the default prior to assumption, and this excuses the condition in Paragraph 53. The debtor also seeks permission to cure the default immediately.

## B. The Failure to Pay Rent

■ The debtor's first point merits little comment. Paragraph 17 of the Lease, entitled "Default," sets out Marburt's remedies in the event of default under the Lease. The debtor points to language in Paragraph 17(1) that states that "[i]f Tenant defaults in fulfilling any of the covenants of this lease *other than the covenants for the payment of rent or additional rent,*" [3] then the landlord may serve a notice of cure. If the default is not cured timely, the landlord may serve a three day notice of cancellation, terminating the Lease. According to the debtor, it follows that the failure to pay rent or additional rent does not constitute a default under the Lease.

This strained interpretation reads one subparagraph in Paragraph 17 and ignores the balance. Paragraph 17(1) creates a conditional limitation and authorizes Marburt to terminate the tenancy based upon uncured defaults other than nonpayment of rent or additional rent. If the failure to pay rent was not also a default, there would be no reason to carve it out from the defaults de-

scribed in Paragraph 17(1). Further, Paragraph 17(2) addresses *defaults* relating to the failure to pay rent. It states that "if tenant shall make default in the payment of rent . . . or additional rent . . . then . . . owner may without notice, re-enter the demised premises either by force or otherwise and dispossess tenant by summary proceedings or otherwise. . . ." Accordingly, I conclude that the debtor's failure to pay a portion of the prepetition rent is a default within the meaning of Paragraphs 17 and 53.

## C. *Ipso Facto* Clauses

■ Since the debtor was in default at the time that the concession kicked in, the plain language of Paragraph 53 prevents it from using the rent concession. Consequently, the debtor next argues that the landlord's "narrow" construction of Paragraph 53—which deprives the debtor of the rent concession because of its prepetition rent default—renders Paragraph 53 an unenforceable *ipso facto* clause, stripping a valuable lease benefit due to a minor default. This argument confuses *ipso facto* clauses with the rules relating to the excuse of conditions discussed in the succeeding section.

■ *Ipso facto,* or bankruptcy, clauses, "automatically terminate the contract or lease, or permit the other contracting party to terminate the contract or lease, in the event of bankruptcy." H.R.Rep. No. 595, 95th Cong., 1st Sess. 348–49 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 59 (1978); U.S.Code Cong. & Admin.News 1978 at 5787, 6020; *accord I.T.T. Small Business Fin. Corp. v. Frederique*, 82 B.R. 4, 6 (E.D.N.Y. 1987). Recognized under the former Bankruptcy Act,[4] such clauses are unenforceable under the Bankruptcy Code:

Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease

---

3. Emphasis added.

4. Section 70(b) of the 1898 Bankruptcy Act provided, in pertinent part, that:

an express covenant that . . . the bankruptcy of a specified party . . . shall terminate the lease or give the other party an election to terminate the same shall be enforceable.
11 U.S.C. § 110(b) (repealed 1978).

may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—

 (A) the insolvency or financial condition of the debtor at any time before the closing of the case;

 (B) the commencement of a case under this title; or

 (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

11 U.S.C. § 365(e)(1); *accord* 11 U.S.C. §§ 363(l), 541(c)(1).

■ Bankruptcy interdicts *ipso facto* clauses because they lead to the forfeiture of valuable assets and hamper the debtor's rehabilitation or liquidation. H.R.Rep. No. 595, 95th Cong., 1st Sess. 348 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 59 (1978). Hence, they are construed broadly to effectuate the Bankruptcy Code's policy against forfeiture. *See DiCello v. United States (In re Railway Reorganization Estate, Inc.),* 133 B.R. 578, 583 (Bankr.D.Del.1991); *In re Compass Van & Storage Corp.,* 65 B.R. 1007, 1013 (Bankr.E.D.N.Y.1986); *Chera v. 991 Boulevard Realty Corp. (In re National Shoes, Inc.),* 20 B.R. 55, 58 (Bankr.S.D.N.Y. 1982). This rule of construction does not, however, relieve the debtor of every contract or lease default. If the debtor's default arises for some reason other than those set forth in section 365(e)(1), the prohibition against *ipso facto* clauses does not apply. *See Reloeb Co. v. LTV Corp. (In re Chateaugay Corp.),* No. 92 Civ. 7054, 1993 WL 159969, at *5 (S.D.N.Y. May 10, 1993); *I.T.T. Small Business Fin. Corp. v. Frederique,* 82 B.R. at 6; *see also Nemko, Inc. v. Motorola (In re Nemko, Inc.),* 163 B.R. 927, 938 (Bankr.E.D.N.Y.1994) (section 365(e)(1) does not apply to a contract that has been breached prepetition).

*I.T.T. Small Business Fin. Corp.* is analogous to the present case and on point. There, the creditor recovered a prepetition judgment against the debtor in the amount of $265,688.36. Prior to the bankruptcy filing, the debtor and the creditor entered into a stipulation settling the creditor's judgment for the lesser sum of $40,000.00, payable in one $15,000.00 payment and thirty-one monthly installments of $500.00 each. The stipulation provided, however, that if the debtor defaulted in making the required payments, and did not cure the default after due notice, the creditor could collect the full amount of the judgment, less credit for any payments made prior to the default. *I.T.T. Small Business Fin. Corp. v. Frederique,* 82 B.R. at 5.

After paying $15,500.00, the debtor defaulted and filed for bankruptcy. The creditor filed a claim in the amount of $240,188.36, representing the remaining balance on the judgment. The debtor objected to the claim, asserting that the default clause in the settlement was an *ipso facto* clause. The Bankruptcy Court agreed, but the District Court reversed. It ruled that the default clause in the settlement was not an *ipso facto* clause because the default, and the concomitant increase in the debt, resulted from the debtor's prepetition failure to make the required payments rather than the commencement of the case. *Id.* at 6. Similarly, the "no-default" provision in Paragraph 53 of the Lease is not an *ipso facto* clause. The debtor's full liability for the administrative rent results from its failure to pay the full amount of the rent prepetition rather than the commencement of this case.[5]

## D. Excuse of Condition

■ Finally, the debtor intimates that the condition of the concession (*i.e.,* the absence of a default) should be excused because the default is minor, the prejudice to the landlord is minimal, and the benefit of the concession to the estate is substantial. Although the debtor is on firmer legal ground here, I am compelled to reject this argument as contrary to New York law and general principles of equity.

---

**5.** In contrast, paragraph 16 of the Lease contains a true *ipso facto* clause. It purports to allow Marburt the right to cancel the Lease if the debtor commences a bankruptcy case. Understandably, Marburt has not invoked this provision.

■ Courts are reluctant to refuse to enforce the parties' lease, as written, in the absence of "fraud, exploitive overreaching or unconscionable conduct on the part of the landlord to exploit a technical breach." *Fifty States Management Corp. v. Pioneer Auto Parks, Inc.*, 46 N.Y.2d 573, 577, 415 N.Y.S.2d 800, 803, 389 N.E.2d 113, 116 (1979); *accord, NL Indus., Inc. v. PaineWebber, Inc.*, 720 F.Supp. 293, 299 (S.D.N.Y.1989); *Lexington Bldg. Co. L.P. v. S–Fer Int'l. Corp.*, ——A.D.2d ——, ——, 640 N.Y.S.2d 1, 1 (1st Dep't 1996). Nevertheless, equity abhors forfeitures, and will intervene to prevent (1) a substantial forfeiture caused by a trivial or technical breach, (2) unconscionable overreaching against the effect of a good faith mistake that is promptly cured by the defaulting party with no prejudice to the creditor or (3) the imposition of liquidated damages disproportionate to the injury caused by the breach or designed to coerce performance. *Fifty States Management Corp. v. Pioneer Auto Parks, Inc.*, 46 N.Y.2d at 576–77, 415 N.Y.S.2d at 802, 389 N.E.2d at 115–16; *see Eastern Sys., Inc. v. West 45th Street Indus. Condominiums, Inc. (In re Eastern Sys., Inc.)*, 105 B.R. 219, 236 (Bankr.S.D.N.Y. 1989), *aff'd*, No. 89 Civ. 7934, 1991 WL 90733 (S.D.N.Y. May 23, 1991); *J.N.A. Realty Corp. v. Cross Bay Chelsea, Inc.*, 42 N.Y.2d 392, 397–98, 397 N.Y.S.2d 958, 960–61, 366 N.E.2d 1313, 1316 (1977); *Graf v. Hope Bldg. Corp.*, 254 N.Y. 1, 13, 171 N.E. 884, 888 (1930) (Cardozo, C.J., dissenting); *see generally*, Restatement (Second) of Contracts § 271 (1979) ("Impracticability excuses the non-occurrence of a condition if the occurrence of the condition is not a material part of the agreed exchange and forfeiture would otherwise result."); *id.* § 229; John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 11–35, at 499–502 (3d ed. 1987).

■ Generally, a lease provision that denies the tenant the ability to exercise a valuable contract right for any breach, however trivial and inconsequential, is likely to be considered an unconscionable penalty that a court of equity will not enforce. *Fifty States Mgmt Corp. v. Pioneer Auto Parks, Inc.*, 46 N.Y.2d at 577, 415 N.Y.S.2d at 803, 389 N.E.2d at 116. If, however, the breach pertains to the failure to pay rent, the unenforceability for other, trivial breaches will not prevent its enforcement in the case of a rent default. *See In re Eastern Sys., Inc.*, 105 B.R. at 236 (debtor-tenant's substantial rent default prevents it from exercising option to purchase in light of provision that conditions option on the absence of any "default under any terms, covenants or conditions" of the parties' leases).

■ Where the default relates to the payment of rent, equity will rarely intervene because the timely payment of rent is material. "A covenant to pay rent at a specified time . . . is an essential part of the bargain as it represents the consideration to be received for permitting the tenant to remain in possession of the property of the landlord." *Fifty States Management Corp. v. Pioneer Auto Parks, Inc.*, 46 N.Y.2d at 578, 415 N.Y.S.2d at 803, 389 N.E.2d at 116; *accord In re Eastern Sys. Inc.*, 105 B.R. at 236 ("[E]quity will not intervene where the forfeiture results from a party's failure to comply with a material term of an agreement, such as the payment of rent under a commercial lease."); *S.E. Nichols, Inc. v. American Shopping Ctrs.*, 130 A.D.2d 855, 857, 515 N.Y.S.2d 638, 639 (3d Dep't) (the tenant's failure to pay percentage rent constitutes a willful breach of a material lease provision), *appeal dismissed*, 70 N.Y.2d 871, 523 N.Y.S.2d 497, 518 N.E.2d 8 (1987).[6]

---

**6.** Some bankruptcy courts have excused rent defaults under analogous situations, stating that "[t]he purpose behind § 365 is to balance the state law contract right of the creditor to receive the benefit of his bargain with the federal law equitable right of the debtor to have the opportunity to reorganize." *Coleman Oil Co. v. Circle K Corp. (In re Circle K Corp.)*, 190 B.R. 370, 376 (9th Cir. BAP 1996) (permitting debtor-tenant to exercise the option to renew a lease, conditioned on the absence of any lease defaults, despite the existence of a prepetition rent default). I disagree in this instance, and find the dissent's reasoning more compelling. *See id.* at 379–82 (Russell, B.J., dissenting). No federal law or principle excuses a "minor" breach in the face of the parties' bargain. *Id.* at 382. The state anti-forfeiture law, in this case New York's, already strikes an appropriate balance between the rights of the parties to realize their bargain, and provides an apt analytical framework to reach a fair decision that is equitable to debtors and creditors alike.

■ The debtor's failure to pay additional rent, due since July 1995, and over three months before the petition date, is neither technical nor trivial, and the debtor has not shown that it was innocent or inadvertent. The debtor, who has the burden to do so, has failed to explain its default or offer any mitigating excuse. In fact, the debtor concedes the default without explanation, excuse or contrition. Further, the debtor never sought to cure the default between July 1995 and the October petition date, and never asked permission to cure the default postpetition under the "doctrine of necessity," discussed below, until after the landlord raised the issue. While equity abhors forfeiture, it does not reward indolence either. In this regard, the debtor should not complain that the landlord sat on its rights when the debtor failed to assert its own.

In addition, the requirement that the debtor pay the fixed rent at the rate due every other month does not penalize or coerce the debtor, and Marburt's motion does not constitute overreaching or exploitive conduct. Marburt does not even insist on strict compliance with Paragraph 53. It is prepared to grant the concession, despite the default at the time it kicked in, if the debtor assumes the Lease and cures the default. Marburt merely wants to avoid the risk that the debtor will never cure the default and never pay the administrative rent. Since, under the literal language of Paragraph 53, Marburt can insist on the full amount of the fixed rent for March, April and May 1996 even if the debtor cures the default now, Marburt is asking for less than the benefit of the bargain it struck with the debtor.

■ Finally, even if equity will intervene in the case of a rent default to prevent a forfeiture, the loss of the concession does not result in a forfeiture. It does not affect the Lease or the debtor's estate, but rather, merely represents the loss of a privilege conditioned on a state of events that did not exist. *Cf. Jefpaul Garage Corp. v. Presbyte-* *rian Hosp.,* 61 N.Y.2d 442, 448, 474 N.Y.S.2d 458, 461, 462 N.E.2d 1176, 1179 (1984) (refusal to renew lease does not result in a forfeiture "but only in the loss of the privilege because the conditions precedent to enjoyment of the privilege have not been met."). Moreover, the debtor has not shown that it made an investment in the property, in the expectation of the availability of the concessions, that would support the finding of a forfeiture. *See J.N.A. Realty Corp. v. Cross Bay Chelsea, Inc.,* 42 N.Y.2d at 399–400, 397 N.Y.S.2d at 962, 366 N.E.2d at 1317–18.

### E. The Debtor's Cross–Motion

■ This brings me to the debtor's cross-motion. The landlord's motion might be rendered academic if I were to grant the debtor the opportunity to immediately cure its prepetition rent default.[7] As a basis to do so, the debtor invokes the "doctrine of necessity" which permits the bankruptcy court to authorize the payment of prepetition claims prior to confirmation.[8] To invoke the rule, however, the debtor must show that the payment is "critical to the debtor's reorganization." *In re Financial News Network, Inc.,* 134 B.R. 732, 736 (Bankr.S.D.N.Y.1991); *accord In re NVR L.P.,* 147 B.R. 126, 128 (Bankr.E.D.Va.1992) ("the proponent of the payment must show substantial necessity"); *In re Eagle–Picher Indus., Inc.,* 124 B.R. 1021, 1023 (Bankr.S.D.N.Y.Ohio 1991) (payment must be "necessary to avert a serious threat to the Chapter 11 process"); *In re Structurlite Plastics Corp.,* 86 B.R. 922, 931 (Bankr.S.D.Ohio 1988) (payment necessary to "permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately") (quoting *In re Chateaugay Corp.,* 80 B.R. 279, 287 (S.D.N.Y. 1987)); *cf. In re Chateaugay Corp.,* 89 F.3d 942, 950 (2d Cir.1996) (debtor may separately classify similar claims and pay one class in full if necessary for the debtor's future viability and effective reorganization). The doc-

---

7. It is not entirely clear if Marburt intends to waive the "no default" condition in the Lease absent a cure accompanied by an assumption, or whether the cure alone suffices. Given the disposition of the debtor's cross-motion, it is unnecessary to clarify the landlord's position.

8. Although the debtor's motion seeks to cure the default prior to assumption instead of confirmation, the principle remains the same.

**836**

trine, however, receives limited application, *In re Financial News Network, Inc.*, 134 B.R. at 735, and mere convenience, without necessity, is insufficient. *In re NVR L.P.*, 147 B.R. at 128; *In re Financial News Network*, 134 B.R. at 736.

 The proponent's burden of proof is a heavy one, and the debtor has failed to meet it. Without doubt, the debtor and its other creditors would prefer it to pay Marburt $1,639.01 instead of $41,250.00, even with the possibility of repayment or a future credit should the debtor assume the Lease as it says it will. But the application of equity requires a factual basis. The debtor has failed to prove the criticality or necessity—as opposed to a preference—of paying the lesser amount, and I cannot fill the evidentiary void through the doctrine of judicial notice. The debtor has not produced any financial or other information that demonstrates an inability to pay the larger sum, or that the immediate cure and grant of the concession is critical to or substantially necessary for a successful reorganization.

In conclusion, the debtor has not shown any legal basis to excuse the condition contained in Paragraph 53 of the Lease, and therefore, was not entitled to the rent concession that it took. Accordingly, the debtor is directed to pay the unpaid postpetition rent within thirty days of the day I sign an order consistent with this decision. If the debtor does not, the landlord is granted relief from the automatic stay to pursue its state court eviction remedies.

SETTLE ORDER ON NOTICE.