**In re: FIFTH TASTE CONCEPTS LAS OLAS, LLC, d/b/a The Brasserie Debtor(s).**

No. 04–26622–BKC–PGH.

United States Bankruptcy Court, S.D. Florida.

May 2, 2005.

Charles I. Cohen, Furr and Cohen, P.A., Boca Raton. FL, for debtors.

---

### ORDER GRANTING DEBTOR'S MOTION TO ASSUME LEASE

PAUL G. HYMAN, JR., Bankruptcy Judge.

**THIS MATTER** came before the Court pursuant to Fifth Taste Concepts Las Olas, LLC's, Motion to Assume Lease Agreement (the "Motion") and Third Avenue Associates, Ltd.'s, Response to the Motion (the "Response"). The Court ordered the parties to submit memoranda of law and to file a Joint Stipulation of Undisputed Facts, which the parties filed on March 3, 2005. The Court having reviewed the Motion and Response, having heard the arguments of counsel, considered the memoranda and Joint Stipulation of Facts, and being otherwise advised in the premises hereby **GRANTS** the Motion.

#### Facts

On October 6, 1997, Third Avenue Associates (the "Landlord") executed a written lease (the "Lease") whereby the Landlord leased real property located on Las Olas Boulevard, Fort Lauderdale (the "Property") to Dancing Bear Restaurants, Inc. On June 26, 2000, Dancing Bear Restaurants, Inc., assigned the Lease to Sokya Las Olas, Inc. The Lease was amended on February 28, 2002. Sokya Las Olas assigned the Lease to Fifth Taste Concepts Las Olas, LLC ("the Debtor") on May 15, 2003, and the Debtor currently operates a restaurant, Brasserie Las Olas, on the Property.

The present dispute concerns whether the Debtor can exercise the Option provision of the Lease despite the Debtor's prepetition defaults. The Option provision in the Lease provides:

> **1.3 Option to Renew.** Provided Tenant is not in default under any of the terms or conditions contained herein, Tenant shall have the option to renew this Lease for four (4) additional terms of five (5) years each upon the same terms and conditions contained herein, with the exception of the Base Rent, which shall be calculated in accordance with Section 2.1 below. Tenant shall exercise its options to renew by providing Landlord with not less than nine (9) months written notice prior to the end of the initial Lease Term, or any subsequent renewal terms, as the case may be. These options to renew shall inure to the benefit of Tenant only, and not to any subtenant or assignee of Tenant, unless such subtenant or assignee of Tenant is an affiliate, parent or subsidiary company of Tenant, or any entity controlled or owned by Michael S. Egan or an immediate family member as provided in Section 12.1(a) below.

The Option provision requires that the Debtor not be in default under any term or condition of the Lease as a condition precedent to the Debtor exercising the Option.

The parties agree that, as of May 10, 2004, the Debtor had defaulted on a total of $73,954.00 in rent payments. In addition, the Debtor failed to maintain insurance as required under the Lease. As a result of these defaults, on May 27, 2004, the Landlord filed two law suits against the Debtor in the County Court of the 17th Judicial Circuit in and for Broward County, Florida, for possession of the Property

and monetary damages (the "State Court Actions").

In June 2004, the parties entered into a Settlement Agreement intended to resolve the outstanding defaults by the Debtor under the Lease. As provided in the Settlement Agreement, the parties agreed that the allegations set forth by the Landlord in the State Court Actions were true and correct including that the Debtor was in default of the Lease. The parties acknowledged that the Settlement Agreement was intended to allow the Debtor to cure the existing defaults under the Lease. The Settlement Agreement also provided that "a default in the payments under this Settlement Agreement shall constitute a default of the Lease, and a default under the terms of the Lease shall constitute a default of this Settlement Agreement." In addition, the Settlement Agreement contained provisions enumerating the Landlord's remedies in the case of any further defaults by the Debtor including continuing to prosecute the State Court Actions.

The Debtor committed further defaults under the Lease and the Settlement Agreement when it failed to pay rent for July and August, 2004. The parties then entered into an Amendment to Settlement Agreement (the "Amendment") in August, 2004 wherein the Debtor acknowledged that it failed to comply with the terms of the Settlement Agreement by failing to pay rent for July and August, 2004 and provided that the Debtor was to pay $21,131.40 to the Landlord by August 23, 2004, to satisfy the outstanding rent. The penalties for defaulting under the Settlement Agreement remained in force under the Amendment.

The Debtor failed to pay rent for September and October, 2004. These failures constituted breaches of the Lease, the Settlement Agreement, and the Amendment. In addition, the Debtor failed to pay the rent on time for November, 2004. The Debtor filed its petition under Chapter 11 of the Bankruptcy Code on November 1, 2004. The Lease's term runs until November 30, 2007. The Landlord has no objection to the Debtor's assumption of the Lease for the remainder of the term. However, Landlord objects to the Debtor exercising the Option in light of its history of defaults.

### Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M). This is a proceeding to assume an executory contract pursuant to 11 U.S.C. § 365(a).

The Debtor argues that the Bankruptcy Code gives it the ability to assume the Lease with all of its terms intact. The Debtor further argues that since it is axiomatic that a debtor that assumes a lease does so with all of its attendant benefits and burdens, then a landlord must similarly be held to the burdens as well as the benefits of a lease upon its assumption. Therefore, the Debtor concludes that its ability to assume the Lease includes the continued enforceability of the Option provision under the Lease, which the Debtor can exercise according to the provision's terms so long as the Debtor cures its prepetition defaults.

The Landlord argues that the Debtor's defaults under the terms of the Lease disqualify it from exercising the Option provision according to the Lease's plain language. The Landlord argues that the Bankruptcy Code does not provide the Debtor with any rights greater than those which it has under the terms of the Lease. Next, the Landlord argues that enforcement of the Lease terms is determined by Florida law, which requires that a con-

tract's language be strictly construed and enforced as written. The Landlord further argues that even if the Debtor cures its defaults, the option to renew a lease is a privilege, and not a right. The Landlord concludes that the option to renew the Lease is a privilege that can be revoked because of the Debtor's prepetition defaults under the Lease.

■■■ Section 365(a) of the Bankruptcy Code allows a trustee or debtor in possession, "subject to the court's approval, [to] assume or reject any executory contract or unexpired lease of the debtor." An executory contract may not be assumed in part and rejected in part. *In re Yates Dev., Inc.*, 241 B.R. 247, 252 (Bankr.M.D.Fla. 1999). A debtor seeking to assume an executory contract must accept its burdens as well as its benefits. *In re St. Johns Home Health Agency, Inc.*, 173 B.R. 238, 246 (Bankr.S.D.Fla.1994). A debtor cannot choose to accept the benefits or desirable features of the contract and reject the burdens or undesirable features of the contract to the detriment of the other party. *In re Yates Dev., Inc.*, 241 B.R. at 252 (citing *Richmond Leasing Co. v. Capital Bank*, 762 F.2d 1303, 1311 (5th Cir.1985); *In re Auto Dealer Services, Inc.*, 65 B.R. 681, 684 (Bankr.M.D.Fla.1986)).

In support of its position, the Landlord cites *In re Tut's Pyramid, Inc.*, 178 B.R. 867 (Bankr.M.D.Fla.1995), as a case that is "on all fours with this case." In *Tut's Pyramid*, a debtor, who had defaulted under a commercial lease, attempted to exercise an option clause within the lease despite its prepetition monetary and nonmonetary defaults. 178 B.R. at 869. The defaults included failure to pay rental charges and amounts due under the lease, and failure to maintain insurance as required under the lease. *Id.* The original lease was amended to include an option clause which provided in part as follows:

"Provided always Lessee shall not be in default in any respect under the Lease Agreement or this Amendment," the Debtor would have the option to renew the Lease for an additional two year period, which option must be exercised with written notice to the Landlord no later than 90 days prior to October 31, 1994.

*Id.* There was no dispute that the debtor was in default according to the terms of the lease. *Id.*

The court in *Tut's Pyramid* held that the debtor, despite its efforts to exercise the option, was not entitled to exercise the option contained in the amendment. *Id.* at 870–71. The court reasoned that the clear contractual provisions required that the debtor not be in default; hence, the debtor had failed to satisfy this "express condition" to exercising the option. *Id.* Furthermore, the court found that since the debtor's attempt to exercise the option was ineffective, the lease had expired three days after the debtor filed its Chapter 11 petition. *Id.* at 871. However, the court explained that even if it assumed that the option had been effectively exercised so that the lease term was properly renewed, the debtor did not meet the requirements for assumption under § 365(b)(1) because it proposed no mechanism to cure its defaults and could not provide adequate assurance of performance in the future. *Id.*

In addition to *Tut's Pyramid,* the Landlord cites additional cases wherein courts have refused to allow debtors to exercise an option in an executory contract where the option is conditioned on an absence of prior defaults. *See, e.g., In re C.A.F. Bindery, Inc.,* 199 B.R. 828, 835–36 (Bankr.S.D.N.Y.1996) (refusing to excuse defaults to preserve rent concession provision that conditioned concession on absence of defaults and refusing to let debtor assume lease); *Eastern Systems, Inc. v.*

*West 45th Street Industrial Condominiums, Inc. (In re Eastern Systems, Inc.)*, 105 B.R. 219, 230 (Bankr.S.D.N.Y.1989) (holding that debtor-tenant's substantial rent default prevents it from exercising option to purchase in light of provision that conditions option on the absence of any "default under any terms, covenants or conditions" of the parties' leases), *aff'd* 1991 WL 90733 (S.D.N.Y.1991). Moreover, Landlord argues that under Florida law, commercial lease agreements are strictly construed and enforced as written. *Rodeway Inns of America v. Alpaugh*, 390 So.2d 370, 372 (Fla.App.2d Dist.1980); *S.H. Kress & Co. v. Desser & Garfield, Inc.*, 193 So.2d 192, 195 (Fla.App. 3rd Dist. 1966). Therefore, the Landlord concludes that the Court must prohibit the Debtor from exercising the Option provision upon assumption because preserving the Option provision would be in contravention of Florida law and the express conditions of the Lease.

The Landlord also cites *Eastern Systems*, 105 B.R. at 230, for the proposition that an option provision under a lease is a privilege that can be voided for failure to perform conditions precedent in the lease agreement. In addition, the Landlord cites *C.A.F. Bindery, Inc.*, 199 B.R. at 835, as support for the proposition that the ability to renew a lease is a privilege and not a right, even if the debtor is permitted to cure existing defaults. *Id.* (citing *Jefpaul Garage Corp. v. Presbyterian Hospital in City of New York*, 61 N.Y.2d 442, 474 N.Y.S.2d 458, 462 N.E.2d 1176, 1179 (1984)). The court in *C.A.F. Bindery, Inc.*, explained that forfeiting a privilege under a lease "does not affect the [l]ease or the debtor's estate," but merely represents the loss of a conditional benefit under the lease that would have been available had the debtor fulfilled specified obligations under the lease. *Id.* The court further explained that if an option to purchase or renew

were an independent covenant apart from a lease, then failure to pay rent under the lease may have no effect on the tenant's ability to exercise the option, but if the option were conditioned upon fulfilling obligations under the lease, then it would be a benefit that would accrue to the tenant only if the enumerated contractual conditions were fulfilled. *See id.; In re Eastern Systems, Inc.*, 105 B.R. at 230.

In opposition to the cases cited by the Landlord, courts in the Ninth Circuit have held that a debtor-tenant may exercise an option to renew a lease without first assuming the lease or curing defaults. *Coleman Oil Co., Inc. v. Circle K Corp. (In re Circle K Corp.)*, 190 B.R. 370, 376 (9th Cir. BAP 1996), *aff'd In re Circle K Corp.*, 127 F.3d 904 (9th Cir.1997), *cert. denied Coleman Oil Co., Inc. v. Circle K Corp.*, 522 U.S. 1148, 118 S.Ct. 1166, 140 L.Ed.2d 176 (1998); *but see Cannery Row Co. v. Leisure Corp. (In re Leisure Corp.)*, 234 B.R. 916, 923–24 (9th Cir. BAP 1999) (bankruptcy court should consider *postpetition* defaults as factor in deciding whether debtor may renew a lease). In *Circle K Corp.*, a group of tenant-debtors, by way of assignments, dissolutions, and mergers, gave notice that they intended to renew commercial leases for gas stations although the leases had not been assumed. *Id.* at 371. The tenant-debtors committed defaults prior to filing bankruptcy. *Id.* at 372. The leases contained a renewal option, which the debtors attempted to exercise during the course of their parent corporation's Chapter 11 case. *Id.* The renewal option clause in the leases provided:

> Lessee shall have two (2) additional and successive terms of five (5) years each on the same terms and conditions as during the original term (except there shall be no extension rights beyond the two contained in this paragraph), ...

provided that Lessee's right to extend is conditioned upon the Lessee not being in default hereunder and is not in default of payments under any of the other leases . . .

*Id.* The landlord filed an adversary proceeding attempting, among other things, to nullify the debtors' right to renew the leases because their defaults were in contravention of the leases' specific conditions precedent. *Id.* The Bankruptcy Court granted summary judgment for the debtors. *Id.*

In affirming the Bankruptcy Court, the Bankruptcy Appellate Panel (the "BAP") recognized that outside of bankruptcy, the landlord could arguably have refused to accept the debtors' attempt to renew the leases unless they cured the existing minor defaults. *Id.* at 374. However, the BAP held that "a debtor who is a lessee under a lease which conditions renewal upon not being in default may exercise its option to renew without first curing the default or assuming the lease." *Id.* The BAP added that exercising the option to renew "must be conditioned upon the eventual assumption of the lease within the applicable time period and cure of all defaults in compliance with the requirements of § 365(b)(1)." *Id.* at 376.

The BAP reasoned that the purpose of § 365 is to allow the Debtor to cure any prepetition defaults upon assumption. *Id.* at 376. By allowing the debtor to cure defaults, the landlord receives the benefit of its bargain in that the debtor's obligations under the lease are brought up to date, and the landlord-creditor is prohibited from enforcing any prepetition default remedies. *Id.* (citing 11 U.S.C. §§ 365(b)(1), 365(d)(3), 362(a)(3)). The BAP also reasoned that landlords would receive undue leverage if debtors were required to cure prepetition defaults before electing to assume or reject an unex-

pired lease. *Id.* at 377. The BAP further explained that if the debtor is forced to cure prepetition defaults to preserve a renewal option prior to assuming or rejecting a lease, and the debtor ultimately chooses to reject the lease, "the prepetition default would have been a general unsecured claim." *Id.* The effect would be to give the landlord "leverage to squeeze a preference out of the debtor." *Id.* Such a result would contravene the purpose behind the Bankruptcy Code in general and § 365 in particular. *Id.*

The Ninth Circuit Court of Appeals affirmed the BAP and held that the bankruptcy court had the power to permit the debtors to extend the leases without first curing the defaults. *In re Circle K Corp.,* 127 F.3d at 909. The Ninth Circuit echoed the BAP's reasoning that if the debtor were forced to cure prepetition defaults prior to assumption or rejection in order to preserve their choice to assume or reject a lease and preserve a renewal clause, then "a later election to reject leaves the lessor with a preference over other pre-petition general creditors." *Id.* at 910. The court remarked that pre-assumption payments to a landlord in order to preserve renewal options would render an election under § 365 "largely illusory if pre-petition defaults must be cured in order to keep the lease alive for election." *Id.*

The Ninth Circuit also explained that granting the debtors the ability to assume a contract and exercise an option to renew without first curing defaults would hardly be the only interference with contractual rights in a bankruptcy proceeding:

Section 365(a) permits a debtor to reject an executory contract or unexpired lease altogether, which wholly contravenes the contract or lease as written. The automatic stay in bankruptcy frequently prevents the enforcement of contracts according to their terms. We have held

that a bankruptcy debtor may cure a default and avoid the termination of a contract even if the contract does not allow for cure ... Thus no principle of bankruptcy or contract law precludes us from permitting the Debtors here to extend their leases in a manner contrary to the leases' terms, when to do so will effectuate the purposes of section 365.

*Id.* at 910–11 (citation omitted). Therefore, the Ninth Circuit concluded, the debtors could exercise the renewal options and then assume the leases at which time they could cure the defaults or give adequate assurance of prompt cure. *Id.* at 911 (citing 11 U.S.C. § 365(b)(1)(A)).

The Court recognizes that a debtor seeking to assume a contract must assume the contract warts and all. *In re St. Johns Home Health Agency, Inc.,* 173 B.R. at 246. However, the question of whether a debtor is permitted to cure defaults under an executory contract in anticipation of exercising an option within the contract is a question that pits the contract's language against the policies of the Bankruptcy Code. On the one hand, if the debtor assumes the lease and wishes to exercise an option to renew the lease despite prepetition defaults, then strictly enforcing the lease's terms could deny the debtor the chance to exercise the option where the debtor has previously defaulted. *See, e.g., In re Tut's Pyramid,* 178 B.R. at 871. On the other hand, the policies of the Bankruptcy Code and § 365 require a court to balance a creditor's right to the benefits of its bargain with the equitable right of the debtor to reorganize. *See In re Circle K Corp.,* 190 B.R. at 376. This Court holds that a debtor who is a lessee under a lease may assume the lease pursuant to 11 U.S.C. § 365, and then, and only then, may the debtor exercise an option contained in the lease.

The Court agrees that *outside of Bankruptcy* an option to renew a lease is not a right but a privilege where the lease language conditions the option to renew on the absence of defaults under the lease. *See, e.g., In re Eastern Systems,* 105 B.R. at 230. However, *in bankruptcy,* the debtor has the right to assume a lease, and the privilege to exercise a renewal option is not forfeited because of prepetition defaults. *See In re Circle K Corp.,* 127 F.3d at 909. In this case, the Court will balance these competing forces by allowing the Debtor to cure its prepetition defaults upon assumption of the Lease, which will allow the Debtor an option to renew that it would otherwise have forfeited under the terms of the Lease, and at the same time the Landlord will be made whole by the Debtor's curing all existing defaults under the Lease.

The problem identified by the BAP and Ninth Circuit Court of Appeals will not exist in this case since the Debtor will first be required to assume the Lease and cure any defaults prior to exercising the option. *See In re Circle K Corp.,* 127 F.3d at 910; *In re Circle K Corp.,* 190 B.R. at 376–77.

However, this Court does not agree with the holding of the Ninth Circuit which would allow the Debtor to exercise the Option provision prior to assumption and cure. The Court also does not agree with those courts cited by the Landlord, which would deny the Debtor the chance to exercise the Option after assumption and cure. This Court takes a middle position between those courts in balancing the Debtor's equitable right to assume the Lease intact and the Landlord's right to have the Debtor perform under the terms of the Lease. The Landlord will be compensated for the prepetition defaults after the Debtor assumes the Lease and cures its prepetition defaults. The Debtor's equitable right to preserve the entirety of the Lease

will be fulfilled after it assumes the Lease and cures its defaults.

■ The Court believes that its Order in this case is consistent with the purpose of the Bankruptcy Code and § 365. The purpose of § 365(b)(1)(A)[1] is to preserve the *entirety* of an unexpired lease upon assumption and cure of any defaults. The policy that favors preserving the entirety of an unexpired lease would put the parties to a lease back in the positions they would have been had no defaults occurred and no bankruptcy petition had been filed. The policy behind Section 365(b)(1)(A) that encourages reorganization requires a debtor to cure all existing defaults under a lease at the same time as it preserves those provisions in the lease that may benefit the debtor's reorganization. In this case, the Option provision will aid the Debtor's efforts at reorganization because having a stable location for its restaurant beyond the Lease's current expiration date in 2007 may prove essential to the Debtor in the event that its efforts at reorganization are successful to that point.

The Court holds that all of the terms of the Lease, when assumed, will remain enforceable, including the Option provision.

### *Conclusion*

The Debtor may assume the Lease with the Option provision in force. Upon assumption, the Debtor must cure its defaults or else give adequate assurance of prompt cure in order to exercise the Option provision.

### *Order*

1. The Debtor's Motion is **GRANTED**.

2. The Debtor may assume the Lease, which includes the Option provision.

3. Upon assumption and cure, the Debtor may exercise the Option provision.

---

1. Section 365(b)(1)(A) provides:

    (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the [debtor-in-possession] may not assume such contract or lease unless, at the time of assumption of such contract or lease, the [debtor-in-possession]—

    (A) cures, or provides adequate assurance that the [debtor-in-possession] will promptly cure such default;